316 So.2d 362

**Robert Eugene WILLIAMS**

v.

**STATE.**

**6 Div. 904.**

Court of Criminal Appeals of Alabama.

July 29, 1975.

William J. Baxley, Atty. Gen., Montgomery, and Quentin Q. Brown, Jr., Asst. Atty. Gen., Birmingham, for the State.

LEIGH M. CLARK, Supernumerary Circuit Judge.

This is an appeal from a conviction of robbery. Defendant was sentenced to imprisonment in the penitentiary for thirteen years in accordance with the verdict of the jury.

In urging that the judgment should be reversed, appellant directs his contentions

Hanes & Hanes and Michael F. Bolin, Birmingham, for appellant.

exclusively to the action of the trial court in admitting into evidence, over the objections of defendant, testimony to the effect that defendant had been convicted of the crime of sodomy. This testimony of defendant himself was admitted after he had taken the stand as a witness in his own behalf and while he was being cross-examined by the State.

It would serve no useful purpose for us to summarize the evidence. However, we have reviewed it, as we have the entire record, and are convinced that the evidence was sufficient to support the verdict of the jury and the judgment of the court in overruling a motion for new trial, and that in our search for any prejudicial error not urged on appeal we have found none.

Appellant's main contention is summarized in the statement "that under the laws of the State of Alabama, the credibility of a witness cannot be impeached by a prior conviction of sodomy, or a crime against nature."

The parties are in agreement that in accordance with Code of Alabama 1940, Title 7, §§ 434, 435, the credibility of a witness cannot be impeached by evidence of a prior conviction of a crime unless such crime involves moral turpitude.

Appellant says that the particular issue is one "of first impression in the State of Alabama.", and appellee states that it is "the impression of the appellee that the appellate courts of this State have not defined sodomy as a crime involving moral turpitude or not involving moral turpitude." Neither side has called our attention to any case in Alabama in which the precise question has been categorically answered.

■ Notwithstanding the apparent dearth of authorities on the specific question, we have no hesitancy whatever in arriving at the conclusion that a crime that consists of sexual relations between persons of the same sex, or with beasts, or between persons of different sex in an un-

natural manner, whether denominated specifically as sodomy, buggery, beastiality, cunnilingus, or otherwise, or whether described generally as a crime against nature, involves moral turpitude. Alabama chooses to call it "a crime against nature, either with mankind or with any beast," and to make it punishable by confinement in the penitentiary for not less than two nor more than ten years. Code 1940, T. 14, § 106.

■ A better summary of the meaning of moral turpitude can hardly be given than that found in McElroy, *Law of Evidence in Alabama,* Vol. I, § 145.01(7) as follows:

" 'Moral turpitude signifies an inherent quality of baseness, vileness, depravity.' *Gillman v. State,* 165 Ala 135, 51 So 722. Moral turpitude 'implies something immoral itself, regardless of the fact whether it is punishable by law. The doing of the act, and not its prohibition by statute fixes the moral turpitude.' *Pippin v State,* 197 Ala 613, 73 So 340. Moral turpitude means 'something immoral in itself. * * * It must not be merely *mala prohibita,* but the act itself must be inherently immoral. The doing of the act itself and not its prohibition by statute, fixes the moral turpitude. * * * It is the nature of the act itself, and not its legislative characterization or punishment which must be the test in determining whether or not it involves moral turpitude.' " *Ex Parte Marshall,* 207 Ala 566, 93 So 451 [471]."

Doubtless having in mind various definitions of moral turpitude throughout the United States and elsewhere, a conclusion is reached, with which we fully agree, in 70 Am.Jur.2d *Sodomy,* § 2, as follows:

"The practice of sodomy is inherently inimical to the general integrity of the human person, and *is clearly an offense involving moral turpitude* whether defined by common law or by statute, the control of which is within the reserved

and police powers of the several states under Articles IX and X of the United States Constitution." (Emphasis supplied).

We do not think appellant is entitled to comfort from cases cited by him that hold that a felony does not in and of itself involve moral turpitude. The cases so holding in Alabama are referable to some offenses made felonies by statutes of Alabama, not felonies at common law, which sodomy in a limited form (buggery) was, beginning with 25 Henry VIII, c. 6 (1533) repealed during the reign of Bloody Queen Mary by 1 Mary, c. 1 (1533) 1st Session, but reenacted by 5 Eliz., c. 17 (1562). In this connection, it is to be noted, as interestingly observed by Judge J. Russell McElroy in his article, *Conviction of Crime to Impeach Witness in Alabama,* 2 Alabama Lawyer 37, that the provision that a conviction of a crime involving moral turpitude shall be admitted to discredit a witness was first made law in Alabama by Section 4008 of the Code of 1907, which changed the language from *infamous crime* to a crime *involving moral turpitude.* He called attention to the codifier's comment that the change was made to meet decisions in *Gordon v. State,* 140 Ala. 29, 36 So. 1009 and *Smith v. State,* 129 Ala. 89, 29 So. 699, which had held that to constitute a discrediting conviction it had to be of a crime *infamous* at common law, which included treason, felony, and *crimen falsi.* In other words, a felony at common law was in and of itself an infamous crime. The change in the language of the Code was made to increase, rather than decrease, the range of discrediting convictions. It was made to include crimes that were not infamous at common law, but obviously it was not designed to exclude any crimes that were infamous at common law, which as shown included the crime here considered.

We are aware of no other crime at common law that has been as vehemently and copiously characterized as infamous. We are not unaware of the relatively recent (1967) British decriminalization of homosexual behavior by consenting adults in private, but until the last few decades at least, history, law and literature of that nation testify alike to the generally recognized baseness of the crime, and the word *infamous* is usually found as a concomitant epithet. This attitude continued unabated to and during the Victorian period, as exemplified by the disaster that befell Oscar Wilde, who vainly attempted by "The Ballad of Reading Gaol" (1898) to rise above the infamy into which his conviction for the crime had plunged him.

"If any crime, says Bacon, deserves to be punished in a more exemplary manner, this one certainly does. Other crimes may be prejudicial to society, but this one strikes at its being. A person who has been guilty of so abusing his faculties will not be likely afterwards to have a proper regard for the opposite sex. The tendency is to deprave the appetite and produce in the person insensibility to the most ecstatic pleasure which human nature is capable of enjoying— the society of women. By the Levitical law, not only the person guilty of the offense was decreed to suffer death, but the beast was also put to death. The tendency of the imputation is to degrade the person charged both morally and socially, and forever brand him with unpardonable infamy and disgrace—a social outlaw; and hence the charge, if unfounded and maliciously made, must be regarded as one of the most grievous wrongs known to the law of our land." Newell, Slander and Libel (3d ed.) § 116.

If we need to say more, if the record of constant quadrimillennial revulsion of moralistic civilizations from the vice that evoked the total and everlasting destruction of Sodom and Gomorrah has been blurred by the mutations of a few years of a single

century, we underscore what was said in *Horn v. State,* 49 Ala.App. 489, 273 So.2d 249 (1973):

"The statute here questioned only fixes 'the punishment for crime against nature, a criminal offense recognized as against human morality and to apply to carnal copulation contrary to nature by the common law and anciently. We adopted the England common law. Title 1, § 3, Code of Alabama 1940, Recompiled, 1958. *Johnson v. State,* 18 Ala.App. 70, 88 So. 348. Public and legal history is replete with knowledge of this criminal offense. It is characterized as abominable, detestable, unmentionable, and too disgusting and well known to require other definition or further details or description. *Boyington v. State,* 45 Ala.App. 176, 277 So.2d 807."

It is true, as appellant states, that the Alabama statute does not mention the word *sodomy,* which was the word chiefly used by the State in cross examining defendant, but the record shows that at one point counsel for the State offered to change the denomination to that of *crime against* nature. Counsel for appellant urges that the word *sodomy* had a more dramatic and harmful impact than the language of the statute. We do not understand, however, that he contends that it was the use of the particular word, rather than the language of the statute, that made the question objectionable. Defendant himself fully understood the word used, as demonstrated by his affirmative answer that he had been convicted of the offense. Furthermore, he volunteered an admission that he was guilty.

The action complained of on the part of the trial court was free of error. Its judgment should be affirmed.

The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby

adopted as that of the Court. The judgment below is hereby

Affirmed.

TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., and SIMMONS, Supernumerary Circuit Judge, concur.

CATES, P. J., not sitting.