[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 821 
Jerry Wayne Williams was indicted in March of 1984 for burglary in the first degree and sodomy in the first degree. On April 18, 1984, the appellant pled guilty to the burglary charge and the sodomy charge was nolle prossed. On May 30, 1984, the appellant was allowed to withdraw his guilty plea. The following day the State filed a motion to reinstate the sodomy indictment. This motion was granted on July 12, 1984 and the two cases were consolidated for trial.
The jury found the appellant guilty of both offenses. Following trial, the State filed a motion to invoke § 13A-5-6
(a)(4), Code of Alabama 1975 to enhance punishment. This motion was denied by the trial judge and the appellant was sentenced to ten years' imprisonment in each case, with the sentences to run concurrently.
The State then filed a writ of mandamus with this court to require the trial judge to enhance punishment pursuant to §13A-5-6 (a)(4). The writ was granted and the appellant was resentenced to twenty years' imprisonment in each case, with the sentences to run concurrently.
The appellant does not challenge the sufficiency of the evidence and thus it is unnecessary to discuss the facts of this case.
 I
The appellant contends the trial judge erred by reinstating the sodomy indictment which had been nolle prossed when the appellant initially pled guilty on the burglary charge.
The entry of a nolle prosequi in a criminal case is a termination of the particular prosecution for that charge.Walker v. State, 61 Ala. 30. (1878). However, the fact that a charge has been nolle prossed does not bar further proceedings on that charge at a later time. Walker, supra; State v.Blackwell, 9 Ala. 79 (1846).
The indictment in question was nolle prossed when the appellant pled guilty to the burglary charge and prior to the empanelling of the jury. Jeopardy only attaches when a jury has been empanelled and sworn and the indictment has been read.Scott v. State, 110 Ala. 48, 20 So. 468 (1896); Elmore v.State, 445 So.2d 943 (Ala.Crim.App. 1983), cert. denied,445 So.2d 943 (Ala. 1984) (defendant was not placed twice in jeopardy when his case was nolle prossed in the district court following indictment with trial thereon in the circuit court). When a case is nolle prossed before jeopardy attaches, further prosecution may be had for that same offense. Elmore, supra;Whitaker v. State, 21 Ala. App. 114, 105 So. 433 (1925); Boswellv. State, 290 Ala. 349, 276 So.2d 592 (1973).
Numerous cases have held that a person is not placed in double jeopardy when the State seeks to prosecute him on a previously dismissed charge, after his guilty plea to another charge has been vacated. See United States v. Barker,681 F.2d 589 (9th Cir. 1982); Klobuchir v. Commonwealth of Pennsylvania,639 F.2d 966 (3rd Cir. 1981); Hawk v. Berkemer, 610 F.2d 445
(6th Cir. 1979); United States v. Smith, 584 F.2d 759 (6th Cir. 1978); United States v. Anderson, 514 F.2d 583 (7th Cir. 1975);People v. Curvin, 81 Ill. App.3d 481, 36 Ill.Dec. 734,401 N.E.2d 575 (1980); Commonwealth v. Reider, 255 Pa. Super. 163,386 A.2d 559 (1978); State v. Boudreaux, 402 So.2d 629 (La. 1981).
These cases indicate that a court's acceptance of a guilty plea to one charge and its dismissal of other charges does not amount to an "implicit acquittal" on the dismissed charges.Hawk, supra. "[A] defendant is acquitted only when `the ruling of a judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" Hawk, supra, at 447, quoting United States v. Scott, 437 U.S. 82, 97,98 S.Ct. 2187, 2197, 57 L.Ed.2d 65 (1978). *Page 822 
In Hawk, supra, the defendant was indicted for aggravated murder, attempted murder and aggravated burglary. He pled guilty to the offense of murder, a lesser included offense of aggravated murder. The aggravated murder, attempted murder and aggravated burglary charges were then dismissed. After the defendant's guilty plea was reversed on appeal, the State sought to reinstate the charges which had been dismissed as a result of the defendant's guilty plea.
The Sixth Circuit held that the reinstatement of the aggravated murder charge would not violate double jeopardy because, when the defendant pled guilty to murder, no evidence was presented relating to the distinct elements of the offense of aggravated murder and the trial judge had made no finding of culpability on that offense. The reinstatement of the offenses of attempted murder and aggravated burglary would not constitute double jeopardy because the offenses were legally and factually distinct from the offense of murder.[1] See alsoSmith, supra; Clark v. State, 294 Ala. 485, 318 So.2d 805
(1974).
Thus, reprosecution on a dismissed or nolle prossed charge does not violate double jeopardy so long as the factual elements of the dismissed charge have not been resolved. UnitedStates v. Schuster, 769 F.2d 337 (6th Cir. 1985).
Further, double jeopardy does not bar reprosecution "in a case where the accused himself has terminated an inquiry into an element of culpability." Hawk, supra, at 447. Nor does it "relieve a defendant from the consequences of his voluntary choice." Schuster, supra, at 342.
The dismissal of the sodomy indictment was not an unequivocal relinquishment of the State's right to prosecute the appellant on this charge. The nolle prosequi of the sodomy indictment was conditioned upon the appellant being convicted and remaining convicted on the burglary charge. Anderson, supra. When the appellant withdrew his guilty plea to the burglary charge, the condition upon which the State agreed not to prosecute him on the sodomy charge was removed. Anderson, supra. The appellant himself, by his negotiated plea on the burglary charge, precluded the resolution of the factual elements of the sodomy charge and an inquiry into his culpability on this charge. This was a deliberate election, on the part of the appellant, to forego an adjudication of his guilt or innocence to the sodomy charge before the first trier of fact. Schuster, supra. Thus, the State was free to reprosecute the appellant on the sodomy charge once he withdrew his guilty plea on the burglary charge.
"To hold otherwise is to find that the Double Jeopardy Clause gives the defendant more than the `benefit of his bargain' and ensures that he will not even be placed in jeopardy once under certain circumstances." Anderson, supra, at 587. See alsoClark, supra.
In light of the above authorities, it is clear that the prosecution of the appellant on the sodomy charge was not prohibited by double jeopardy.
The question before this court, then, is whether the reinstatement of the sodomy indictment was a proper way to reinstate the proceedings for prosecution on this charge. Certainly, the State could have reinstated proceedings on the sodomy charge by reindicting this appellant. Section 15-8-131, Code of Alabama 1975 specifically provides that, when an indictment is quashed, the trial judge may order another indictment to be preferred for the offense charged. The trial judge in the case at bar did not choose this remedy. Instead, he chose to reinstate the sodomy indictment.
Section 15-8-71, Code of Alabama 1975 states: *Page 823 
 "In all criminal cases in the circuit court in which a capias or warrant of arrest has issued for two terms and has been returned `not found,' the district attorney may, by leave of the court, withdraw and file the indictment, with leave to reinstate the same when the ends of justice require such reinstatement. In all cases where a defendant is confined in one of the Alabama state hospitals under the provisions of sections 15-16-21 and 15-16-22, the district attorney may, by leave of the court, withdraw and file the indictment, with leave to reinstate the same when the ends of justice require such reinstatement."
We do not find that this statute limits the circumstances in which an indictment can be reinstated. There is nothing in the statute which indicates to this court that the reinstatement of an indictment is allowed only in the two situations set out above.
Historically, an indictment which has been dismissed or nolle prossed can be reinstated within the same term of court due to the court's inherent power to vacate and set aside their orders of judgment within the same term of court.[2] United States v.Rossi, 39 F.2d 432 (9th Cir. 1930); State v. Lonon,331 Mo. 591, 56 S.W.2d 378 (1932); People v. Watson, 394 Ill. 177,68 N.E.2d 265 (1946).
The reinstatement of an indictment, which has beenunconditionally nolle prossed during one term of court, is generally precluded at a subsequent term[3] of court. State v.Veterans of Foreign Wars Post 1856, 223 Iowa 1146, 274 N.W. 916
(1937); State v. Montgomery, 276 S.W.2d 166 (Mo. 1955). See generally 112 A.L.R. 383, 21 Am.Jur.2d, Criminal Law, § 513; 41 Am.Jur.2d, Indictments and Informations, § 36.
However, there is authority that permits the reinstatement of an indictment which has been nolle prossed, at any time, under special circumstances. See 41 Am.Jur.2d, Indictments and Informations, § 36. One of those special circumstances is in a situation similar to the one at bar. Barker, supra, (reinstatement of dismissed indictment for first degree murder approved after defendant withdrew her plea of guilty to second degree murder); Hawk, supra, (charges dismissed pursuant to a plea agreement could be reinstated when defendant's guilty plea to another charge was reversed on appeal); United States v.Wells, 430 F.2d 225 (9th Cir. 1970) (if defendant successfully withdraws guilty plea, there is nothing to prevent the government from reviving the counts that were dismissed as a result of the guilty plea); United States v. Gerard,491 F.2d 1300 (9th Cir. 1974) (in dicta, court stated that, if a defendant succeeds in withdrawing guilty plea, he should not be able to object to the prosecutor's reviving other charges dismissed as a result of his guilty plea); Santobello v. NewYork, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (in footnote 2, the Supreme Court said that, if the defendant is allowed to withdraw his guilty plea, he would then plead anew to the original charges); Blackburn v. State, 290 S.E.2d 22
(W.Va. 1982) (if defendant chooses to disregard plea agreement, the State should be allowed to reinstate any charges dismissed pursuant to the plea agreement); State v. Burkett,231 Kan. 686, 648 P.2d 716 (1982) (when defendant is allowed to withdraw from plea bargain agreement, the State may reassert the original felony charge); People v. Keenan, 185 Colo. 317,524 P.2d 604 (1974) (when guilty plea is vacated on appeal, charges dropped as a result of plea bargaining could be reinstated);Clark, supra. But see Allman v. State, 677 P.2d 832 (Wyo. 1984); (further prosecution on an indictment which has *Page 824 
been dismissed is a nullity and reinstatement of the indictment was not permitted); Niece v. State, 456 N.E.2d 1081 (Ind.App. 2 Dist. 1983) (after defendant's guilty plea was vacated, trial court improperly reinstated count of indictment which had been dismissed pursuant to a plea agreement).
The courts that have approved the reinstatement of dismissed charges after the vacation of a guilty plea seem to imply that this is a valid remedy due to the conditional nature of dismissed charges resulting from a guilty plea. When charges are dismissed as a part of a plea bargain agreement, the dismissal of the charges is conditioned upon the defendant being convicted and remaining convicted of the offense to which he pled guilty. Anderson, supra. When the State dismisses a charge pursuant to a plea agreement, it does so relying on the fact that the defendant will plead guilty to the remaining charge or charges and that his conviction will stand.
Since the defendant is allowed to withdraw from his part of the bargain in a guilty plea agreement, should not the State be afforded the same right? It is hardly surprising that, when a defendant is successful in withdrawing his guilty plea, the State would seek to withdraw its consent to the dismissal of charges as a result of the guilty plea. United States ex rel.Williams v. McMann, Warden, 436 F.2d 103 (2nd Cir. 1970).
In Sweetwine v. State, 42 Md. App. 1, 398 A.2d 1262 (1979), Judge Moylan stated that "[i]n the context of a negotiated plea of guilty, the whole package of reciprocal arrangements and obligations is conditional. The condition is the continuing good health of the guilty plea. If it is voided, both the defendant and the State return to `square one.' They both begin again with a clean slate. The invalidation of the `contract' invalidates all obligations under that contract by either contracting party." Sweetwine, supra, 398 A.2d at 1265 (footnotes omitted).
Thus, it seems that, when the defendant withdraws his guilty plea or it is vacated for some other reason, then the State is free to pursue the charges which were dismissed as a result of the plea agreement. Myers v. Frazier, 319 S.E.2d 782 (W.Va. 1984).
In Lonon, supra, the Supreme Court of Missouri discussed the rationale for allowing the reinstatement of charges dismissed during the same term of court. Although, as we have discussed, this practice has been traditionally permitted because of the court's inherent power to vacate their orders during the same term of court, the ultimate rationale for the allowance of this practice is sound and applicable to the situation before us.
 "There is no difference, so far as the defendant's rights are concerned, whether, after the dismissal of a charge, a new information or indictment is filed or the order of dismissal set aside and defendant tried on the old information or indictment."
Lonon, supra, 56 S.W.2d at 380.
In the present case, we fail to see how the appellant was prejudiced by the trial judge's reinstatement of the sodomy indictment since he was placed in the same position he was in before his plea bargain agreement was accepted. Boudreaux, supra.
The appellant was here indicted by a grand jury for the offense of sodomy in the first degree. He procured the dismissal of this charge by his guilty plea to the burglary charge. When he withdrew his guilty plea, the trial judge reinstated the sodomy indictment at the State's request. This action merely returned the appellant and the State to "square one" (i.e., their initial positions).
An exhaustive search of the case law in Alabama fails to reveal any case which expressly permits the reinstatement of a dismissed indictment in a situation such as the case at bar. However, we have found two cases which seem to approve of this remedy. In Stinson v. State, 3 Ala. App. 74, 57 So. 509 (1912), it was held that an accused is "estopped to plead as a former jeopardy the institution of a previous proceeding *Page 825 
against him on the same charge which he procured to be dismissed. . . ." Stinson, supra, 57 So. at 509. The language of the court seems to imply that the State may reprosecute a defendant on a charge which he caused to be dismissed without having to reindict him for that charge.
In Clark, supra, the defendant was initially indicted for first degree murder. He pled guilty to second degree murder. Thereafter, his conviction for second degree murder was reversed on appeal. The State then prosecuted the defendant on the original indictment for first degree murder. The Alabama Supreme Court held that the subsequent prosecution of the defendant on the original indictment was valid.
The distinguishing feature between the situation in Clark, supra, and the case before us is that in Clark, there is no indication that the first degree murder indictment had been dismissed and then reinstated.
However, the Alabama Supreme Court's reasoning in Clark seems to allow for this remedy. They found the United State's Supreme Court's Footnote 2 in Santabello, supra, "highly significant."Clark, supra, 318 So.2d at 809. This footnote reads: "If the state court decides to allow withdrawal of the plea, the petitioner will, of course, plead anew to the original charges on two felony counts."
In Clark, the court stated that the prosecution of the defendant on the original indictment after his guilty plea conviction had been reversed was proper because the proceedings continued on the original indictment.[4]
Our analysis of the holdings in Stinson and Clark indicates that, when a defendant procures a dismissal of a charge as a result of a guilty plea to another charge, and if he later withdraws his plea or it is vacated for some other reason, the State may seek reinstatement of the dismissed charges. Once the indictment is reinstated, the State may continue proceedings on that charge.
Therefore, we hold that the trial court's action in reinstating the sodomy indictment was correct. No error appears.
 II
The appellant asserts that he was improperly sentenced under the provisions of § 13A-5-6 (a)(4), Code of Alabama 1975. As the State submits in its brief, this issue has been previously decided adversely to the appellant by this court in its order granting the State's Petition for Writ of Mandamus. See ExParte State of Alabama, ex rel. James H. Evans, In re. State ofAlabama v. Jerry Williams, 461 So.2d 61 (Ala.Crim.App. 1984).
 III A
The appellant challenges his conviction of sodomy in the first degree on the basis that this statute is unconstitutional. Specifically, he contends this statute violates the equal protection clause of the fourteenth amendment of the United States Constitution, because it only punishes persons who are not married to the victim and protects only victims who are not married to the offender.
Section 13A-6-63, Code of Alabama provides in pertinent part that:
 "(a) A person commits the crime of sodomy in the first degree if:
 (1) He engages in deviate sexual intercourse with another person by forcible compulsion." (emphasis added).
"Deviate sexual intercourse" is defined in § 13A-6-60 (2) as:
 "Any act of sexual gratification between persons not married to each other, involving *Page 826 
the sex organs of one person and the mouth or anus of another." (emphasis added)
Thus, due to the use of the language "persons not married to each other," there is a "marital exemption" for forcible sodomy.
Although the State does not challenge the appellant's standing to raise this constitutional claim, we must address this issue briefly. It seems that the persons who would seek to question the validity of the "marital exemption" for forcible sodomy would be a married person who has been the victim of a forcible sodomy and who seeks the protection of this statute and an unmarried person who has violated the statute and who wishes to escape criminal liability for this offense.[5]
Certainly a married person who has committed forcible sodomy would not challenge the constitutionality of the "marital exemption" since he enjoys the benefits of this exemption from liability. Clancy, Equal Protection Considerations of the Spousal Assault Exclusions, 16 N.Eng.L.Rev. 1, 4 (1980).
The basic tenet of the appellant's challenge to the statute in question is that this statute is underinclusive. In other words, he is burdened because he is punished under this statute for his conduct, while others who engage in the same conduct proscribed by the statute escape punishment merely because they are married to the victim.
"One burdened by a statutory classification will have standing to assert an equal protection claim." Clancy, supra at 7. "The burden alone is sufficient to establish standing." Orrv. Orr, 440 U.S. 268, 273, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306
(1979).
 "This rule of standing applies as well to a defendant in a criminal prosecution who, while conceding that it is within the power of a State to make criminal the behavior covered by a statute, asserts that the statute he is prosecuted under violates equal protection because it burdens him but not others (see Linda R.S. v. Richard D., 410 U.S. 614, 619, n. 5, 93 S.Ct. 1146, 1149, n. 5, 35 L.Ed.2d 536 [(1973)]; Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 [(1942)])."
People v. Liberta, 64 N.Y.2d 152, 485 N.Y.S.2d 207,474 N.E.2d 567, 571 (1984).
Thus, this appellant has standing to raise the constitutional issue before this court.
 B
A married person cannot be convicted of forcibly sodomizing his or her spouse in this state. A married person is excluded from liability under the forcible sodomy statute due to the so-called "marital exemption." This statute classifies unmarried persons differently than married persons and, thus, it is subject to an equal protection challenge. Liberta, supra. "The equal protection clause of the fourteenth amendment of the United States Constitution requires that similarly situated individuals be treated in a similar manner by a state." Clancy, supra, at 8. However, "the equal protection clause does not prohibit a state from making classifications, provided the Statute does not arbitrarily burden a particular group of individuals." Liberta, supra, 485 N.Y.S.2d at 213, 474 N.E.2d at 573, (citing Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251,30 L.Ed.2d 225 (1971)).
The statute in question ". . . on its face discriminates between married and unmarried persons, making criminal when done by the latter what is innocent when done by the former. With that distinction drawn, we look to see whether there is, as a minimum, `some ground of difference that rationally explains the different treatment accorded married and unmarried persons' under the statute." People v. Onofre, 51 N.Y.2d 476,434 N.Y.S.2d 947, 953, 415 N.E.2d 936, 942 (1980), cert. denied, 451 U.S. 987, 101 S.Ct. 2323, *Page 827 68 L.Ed.2d 845 (1981) (quoting Eisenstadt v. Baird, 405 U.S. 438,92 S.Ct. 1029, 31 L.Ed.2d 349 (1972)). In other words, is there a rational basis for the distinction made between married and unmarried persons in our forcible sodomy statute?
Although the State has not provided this court with any kind of justification for the "marital exemption" for forcible sodomy, we shall address the rationales that have been put forth in support of the "marital exemption" for rape and other sexual assaults.[6]
In Liberta, supra, the Court of Appeals of New York found that there was no rational basis for the "marital exemption" in New York's rape and forcible sodomy statutes.[7] The court, in their decision, discussed the traditional and modern rationales for the "marital exemption." Although the court stated that their reasoning was equally applicable to the forcible sodomy statute, Liberta, supra, footnote 3, their discussion focused on the "marital exemption" for rape. Thus, we shall address the rationales for the "marital exemption" discussed in Liberta, supra, specifically in relation to the "marital exemption" for forcible sodomy.
One of the traditional rationales for the "marital exemption" concerns the concept of "implied consent." Liberta, supra. At common law, there was a "marital exemption" for rape based on the theory that, when a woman makes her marriage vows, she impliedly consents to sexual intercourse with her husband during marriage. This concept is credited to Lord Hale, the 17th century jurist, who made the statement, without any supporting authority, that "[t]he husband cannot be guilty of a rape committed by himself upon his lawful wife, for by their mutual matrimonial consent and contract the wife hath given up herself in this kind unto her husband, which she cannot retract." Liberta, supra, 485 N.Y.S.2d at 212, 474 N.E.2d at 572, (quoting from 1 Hale, History of Pleas of the Crown, p. 629).
Although Alabama recognized the concept of implied consent as it pertained to marital rape, see Anonymous, 206 Ala. 295,89 So. 462 (1921), this concept has never been applied to the offense of sodomy. Under former Alabama law,[8] consent, express or implied, was never a defense to a charge of sodomy, whether the acts charged were committed by married or unmarried persons. Williams v. State, 354 So.2d 48 (Ala.Crim.App. 1977), cert. denied, 354 So.2d 53 (Ala. 1978) (and cases cited therein). A "marital exemption" for sodomy, consensual or forcible, has never existed in this state until the present code.[9]
"Where two persons voluntarily engage in an act of sodomy, both are guilty." Williams, supra, at 51 (interpreting former Alabama sodomy statute). However, in cases where a person was forced to commit an act of sodomy, that person was not an accomplice. Andrews v. State, 359 So.2d 1172 (Ala.Crim.App. 1978); Mahone v. State, 44 Ala. App. 372, 209 So.2d 435 (1968). In Mahone, supra, the defendant was convicted of sodomizing his wife by force. Thus, the court's holding in Mahone, supra, expressly rejects any notion of implied consent to acts of sodomy. See also Warren v. State, 255 Ga. 151, 336 S.E.2d 221
(1985) (court rejected the implied *Page 828 
consent to sodomy theory in holding that there is no "implied marital exemption" contained in Georgia's aggravated sodomy statute); State v. Smith, 401 So.2d 1126 (Fla. 5th DCA 1981) and State v. Rider, 449 So.2d 903 (Fla. 3rd DCA 1984) (Florida courts held there is no implied consent to sexual battery which includes acts of sodomy).
Thus, since there has never been a notion of "implied consent" to sodomy in Alabama, it would be absurd to find that one exists now. Warren, supra. Forcible sodomy is not merely a sexual act, it is a crime of violence and a degrading experience for the victim. Warren, supra; Liberta, supra;Smith, supra; Rider, supra. The act of forcible sodomy violates the bodily integrity of the victim and often causes the victim to suffer long-lasting physical and psychological injury.Warren, supra; Liberta, supra.
It would be ludicrous to hold that a marriage license implies consent to such a gross violation of one's bodily integrity.Warren, supra; Liberta, supra. A married person has the same right to control his or her body as does an unmarried person.Eisenstadt, supra; Liberta, supra.
"While recognizing the sanctity of marriage, modern decisional law also recognizes that the right of a wife [or husband] to supremacy over her [or his] own body is paramount to her [or his] spouse's desire. Indeed her [or his] right to individual autonomy . . . [is] but a part of the more comprehensive right to bodily integrity." People v. DeStefano,121 Misc.2d 113, 467 N.Y.S.2d 506 (Co.Ct. 1983).
"A married [person] has the right to resist overtures by [his or her spouse] to have sexual relations, whether of a conventional or an unusual nature. A married [person] is not compelled by law to submit against [his or] her will to sexual contact which [he or] she finds offensive." Note, the Marital Rape Exemption, 52 N.Y.U.L.Rev. 306, 321 (1977).
Any implied consent notion would give one spouse the control over the other spouse's bodily integrity. Weishaupt v.Commonwealth, 227 Va. 389, 315 S.E.2d 847 (1984). Thus, when a person says "I do" in Alabama, they retain the right to say "I won't" to acts of sodomy. Warren, supra.
The common law doctrines that a wife is her husband's property and that her legal existence is incorporated into her husband's have long been rejected. Liberta, supra; Smith, supra; DeStefano, supra. "Nowhere in the common-law world — indeed in any modern society — is a woman regarded as chattel or demeaned by a denial of a separate legal identity and the dignity associated with recognition as a whole human being."Trammel v. Trammel, 445 U.S. 40, 52, 100 S.Ct. 906, 913,63 L.Ed.2d 186 (1980). Certainly, then, these archaic notions cannot provide a basis for a "marital exemption" in our forcible sodomy statute.
A modern justification that has been asserted in support of the "marital exemption" is that it protects against governmental invasion into marital privacy. The right to marital privacy was recognized by the United States Supreme Court in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678,14 L.Ed.2d 510 (1965). The "marital exemption" for forcible sodomy cannot be justified by this marital privacy right because "[t]he import of the Griswold decision is that [only] private, consensual, marital relations are protected from regulation by the State through the use of a criminal penalty."Cotner v. Henry, 394 F.2d 873, 875 (7th Cir. 1968). The right to marital privacy is not absolute or unqualified. State v.Bateman, 113 Ariz. 107, 547 P.2d 6 (1976) (court held marital privacy right not violated by husband's conviction for forcing an act of sodomy upon his wife.) "Marital privacy was not designed as a shield to allow one spouse to force the other into nonconsensual acts." Clancy, supra, at 23.
The right to marital privacy is not applicable when force is used to commit a sodomy. Bateman, supra; Doe v. Commonwealth'sAttorney, 403 F. Supp. 1199, 1204 *Page 829 
(E.D.Va. 1975) (Merhige, J., dissenting); Towler v. Peyton,303 F. Supp. 581 (W.D.Va. 1969) (marital right to privacy not available when act of forcible sodomy committed); Note, Doe andDronenburg: Sodomy Statutes are Constitutional, 26 William and Mary L.Rev. 645 (1985). In fact, the State has a compelling interest in "protecting its citizens from violence even if the combatants are married to one another." Bateman, supra, 547 P.2d at 9. It makes no difference whether a crime is committed in the bedroom or otherwise. Cotner, supra, (Duffy, J., dissenting).
Violent sexual assaults are not protected by the marital right to privacy. Liberta, supra. These acts of violence can be constitutionally proscribed. Clancy, supra. Griswold, supra, cannot be used to justify a forcible sodomy of a spouse. Rider, supra, footnote 6.
The argument that the elimination of the "marital exemption" for forcible sodomy would disrupt marriages because it would discourage reconciliation is untenable. Liberta, supra. "Clearly, it is the violent [sexual assault] and not the subsequent attempt of the [injured spouse] to seek protection through the criminal justice system which `disrupts' a marriage." Liberta, supra, 485 N.Y.S.2d at 214, 474 N.E.2d at 574. When a marriage relationship has deteriorated to the point of forcible and unwanted sexual contact, reconciliation seems highly unlikely. DeStefano, supra.
Other justifications for the "marital exemption" for forcible sodomy are that the offense of forcible sodomy in marriage would be difficult to prove and that the elimination of the exemption would result in fabricated complaints. Liberta, supra. These arguments must fail. The evidentiary problems concerning one spouse's lack of consent to an act of sodomy would be no more difficult than proving lack of consent by a victim involved in a non-marital relationship with the perpetrator of a forcible sodomy. Liberta, supra. Should not married persons be afforded the same protection as unmarried persons merely because some evidentiary problems may be encountered?
As heretofore stated, there is no implied consent by a spouse to acts of sodomy during marriage. Therefore, proof of lack of consent to marital sodomy would be even less difficult than proof of lack of consent to sexual intercourse in a marital rape case. Furthermore, convictions for this offense have been obtained in this state and elsewhere, in spite of this evidentiary problem. See Mahone, supra; Bateman, supra; Warren, supra; Towler, supra.
The possibility that married persons will fabricate complaints of forcible sodomy seems to be no greater than unmarried persons doing so. Liberta, supra. If women are reluctant to report rapes because of embarrassment and humiliation, a person would be even more reluctant to falsify a report of an act that society has historically characterized as abominable, detestable, unnatural, disgusting, infamous and unmentionable. Williams v. State, 55 Ala. App. 436,316 So.2d 362 (Ala.Crim.App. 1975).
"The criminal justice system, with all of its built-in safeguards, is presumed to be capable of handling any false complaints. Indeed, if the possibility of fabricated complaints were a basis for not criminalizing behavior which would otherwise be sanctioned, virtually all crimes other than homicides would go unpunished." Liberta, supra, 485 N.Y.S.2d at 214, 474 N.E.2d at 574.
Another rationale for the "marital exemption" is that there are alternative remedies available to the victim of a forcible sodomy by a spouse, such as the assault statutes. Liberta, supra. However, the very existence of our forcible sodomy statute is recognition of the fact that the harm caused by a forcible sodomy is different in nature from the harm caused by an ordinary assault. Liberta, supra. In a situation where a person forcibly sodomizes his or her spouse without the use of a deadly weapon or a dangerous instrument, and without causing serious physical injury to the victim, he or she could only be found *Page 830 
guilty of a class A misdemeanor if prosecuted under the assault statutes. See § 13A-6-20 through 22, Code of Alabama 1975. If that person were prosecuted for forcible sodomy, he or she could be convicted of a class A felony. This vast differentiation in punishment clearly disproves this alternative remedy theory.
The argument that a forcible sodomy committed by a spouse is less severe than a forcible sodomy committed by a person other than a spouse is totally without merit. The harm caused by a spousal sexual assault is often more traumatic than a sexual assault by a stranger because the person who commits this act is someone whom the victim loves and trusts and someone who, under the marital relationship, supposedly loves and respects the victim.
None of the rationales for the "marital exemption" that we have discussed provide a rational basis for distinguishing between married and unmarried persons in the forcible sodomy statute. Forcible sodomy is a crime of violence, not of sex, regardless of whether it occurs within the realms of marriage or not. Smith, supra; Rider, supra; Warren, supra.
There can be no justification for a forcible sodomy upon one's spouse. A spouse who is the victim of a forcible sodomy is entitled to the same equal protection of the laws as an unmarried person who is the victim of a forcible sodomy. Furthermore, a married person who forcibly sodomizes his or her spouse should be equally as liable as an unmarried person who commits this act.
A rule that protects unmarried persons from forcible sodomies but not married persons and excludes married persons from liability from these acts but not unmarried persons cannot withstand constitutional scrutiny. The underinclusiveness of the forcible sodomy statute is not rationally based. Thus, the "marital exemption" as it applies to our forcible sodomy statute violates the equal protection clause of the fourteenth amendment of the United States Constitution.
 C
We have determined the statute in question is constitutionally defective because it is underinclusive. Thus, we have two alternatives. We can either invalidate the statute in its entirety and hold that its benefits do not extend to those persons for whom the legislature intended the statute to benefit or we may extend its benefits to those persons who are presently excluded from the scope of the statute. Califano v.Westcott, 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979);Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792,26 L.Ed.2d 308 (1970); Orr v. Orr, 374 So.2d 895 (Ala.Civ.App.), cert. denied, 374 So.2d 898 (Ala. 1979); Ransom v. Ransom,401 So.2d 746 (Ala. 1981); Hall v. McBride, 416 So.2d 986 (Ala. 1982);Liberta, supra.
 "The choice between invalidation of a statute or expansion of the scope of its applicability requires, of necessity, an ascertainment of the predominant legislative purpose underlying the statute's enactment. Beal [v. Beal, Me., 388 A.2d 72 (1978)], supra. That is to say, given the nature and substance of the statute, its relevant economic, social, and historical implications, can it be concluded that benefits should be terminated to the class of persons whom the legislature intended to benefit."
Orr, supra, at 897; Ransom, supra, at 748; Hall, supra, at 991.
 "In any case where a court must decide whether to sever an exemption or instead declare an entire statute a nullity it must look at the importance of the statute, the significance of the exemption within the over-all statutory scheme, and the effects of striking down the statute (Califano v. Westcott, 443 U.S. at p. 90, 99 S.Ct. at p. 2664, supra; Welsh v. United States, 398 U.S. at pp. 365, 366, 90 S.Ct. at pp. 1809, 1810 [Harlan, J., concurring], supra; Developments in the Law — Equal Protection, 82 Harv.L.Rev. 1065, 1136-1137). Forcible sexual assaults have historically been treated as serious crimes *Page 831 
and certainly remain so today (see, generally, Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 [(1977)], supra; 1 Callaghan's Criminal Law in New York [Groble, 3d ed.], § 19:01). Statutes prohibiting such behavior are of the utmost importance, and to declare such statutes a nullity would have a disastrous effect on the public interest and safety.
. . . .
 "We recognize that a court should be reluctant to expand criminal statutes, due to the danger of usurping the role of the Legislature, but in this case overriding policy concerns dictate our following such a course in light of the catastrophic effect that striking down the statutes and thus creating a hiatus would have (cf. Goodell v. Goodell, 77 A.D.2d [684] at p. 685, 429 N.Y.S.2d 789 [(1980)], supra)."
Liberta, supra, 485 N.Y.S.2d at 218-19, 474 N.E.2d at 578-79.
We conclude that our legislature would determine and prefer to have a forcible sodomy statute which applies equally to all persons, married and unmarried, rather than have no statute at all covering this particular offense. Certainly, the legislature would choose to eliminate the "marital exemption" from the statute in question and thereby retain the offense of forcible sodomy in our criminal statutes.
Thus, the "marital exemption" for the offense of forcible sodomy is hereby severed and removed from this statute. The statute at issue is now enlarged to include married, as well as unmarried, persons. Therefore, any person who engages in deviate sexual intercourse with any other person, by forcible compulsion, is guilty of the offense of sodomy in the first degree.
Since the court has chosen to uphold, rather than strike down this statute, the appellant's conviction for sodomy in the first degree is due to be and is hereby affirmed. His conviction is not in violation of due process of law because, at the time the appellant committed this offense, he had notice that his conduct constituted the offense of sodomy in the first degree in this state. Since the appellant was not in the class of persons protected by the "marital exemption," which was in effect prior to the date of this opinion, his conduct was proscribed by the forcible sodomy statute in effect at the time he committed this offense. Liberta, supra.
 "Neither can it be said that by the affirmance of his conviction the defendant is deprived of a constitutionally protected right to equal protection. The remedy chosen by our opinion is to extend the coverage of the provisions for forcible . . . sodomy to all those to whom these provisions can constitutionally be applied. While this remedy does treat the defendant differently than, for example, a married man who . . . [sodomized his wife] prior to this decision, the distinction is rational inasmuch as it is justified by the limitations imposed on our remedy by the notice requirements of the due process clause (U.S. Const., 14th Amdt.), and the prohibition against ex post facto laws (U.S. Const., art. I, § 10). Thus, for purposes of choosing the proper remedy, the defendant is simply not similarly situated to those persons who were not within the scope of the statutes as they existed prior to our decision." Liberta, supra, 485 N.Y.S.2d at 219, 474 N.E.2d at 579.
Therefore, the appellant's convictions for burglary in the first degree and sodomy in the first degree are due to be, and are hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The offenses in this case, burglary in the first degree and sodomy in the first degree, are legally and factually distinct from each other. See § 13A-7-5 and § 13A-6-63, Code of Alabama 1975.
[2] Alabama courts are vested with the inherent power to set aside and vacate their orders within the same term of court.City of Union Springs v. Evans, 286 Ala. 412, 240 So.2d 662
(Ala. 1970); Yellow Cab Company of Birmingham v. Frost,279 Ala. 591, 188 So.2d 550 (1966).
[3] In Alabama, terms of court are abolished and only sessions of court are now held. Livingston Bail Bonds v. State,416 So.2d 423 (Ala. 1982).
[4] This case is distinguished from the Supreme Court's holding in Wesley v. State, 481 So.2d 1162 (Ala. 1985) in which the Supreme Court held that the defendant could not be tried on the original indictment after his guilty plea to a lesser included offense had been reversed on appeal. The court's holding inWesley was based on the fact that the original indictment had been amended and that the amended indictment was void.
[5] The appellant, who was not married to the victim at the time this offense was committed, falls into the latter category.
[6] Our decision today is limited to the forcible sodomy statute since only the constitutionality of this statute is before us. However, our reasoning may well apply to other offenses.
[7] New York's rape and forcible sodomy statutes are almost identical to Alabama's statutes. See N.Y. Penal Code, § 130.35, § 130.00, subd. 4; § 130.50, § 130.00, subd. 2 (1975).
[8] See § 13-1-110, Code of Alabama 1975; Tit. 14, § 106, Code of Alabama 1940 (Recompiled 1958); § 3862, Code of Alabama 1923; § 6746, Code of Alabama 1907; § 4642, Code of Alabama 1896.
[9] There is also a "marital exemption" for consensual acts of sodomy. The offense of consensual sodomy is included in the sexual misconduct statute. See § 13A-6-65 (3), Code of Alabama 1975. The constitutionality of consensual sodomy statutes is presently pending before the United States Supreme Court. SeeHardwick v. Bowers, 760 F.2d 1202 (11th Cir. 1985); cert. granted, ___ U.S. ___, 106 S.Ct. 342, 88 L.Ed.2d 284 (1985). *Page 832