This is an appeal by the State from the trial court's dismissal of a two-count indictment, which was the third indictment and the fourth criminal proceeding based on the same facts. This indictment charged Ralph McNeill with first-degree rape and second-degree rape, violations of §§ 13A-6-61 and13A-6-62, Ala. Code 1975, respectively. Because the issue raised on appeal is procedural, we will first outline the facts and the procedural history of the case. We note that the chronology of the proceedings before the third indictment is sketchy. Parts of the chronology below reflect events detailed in a November 1995 motion to dismiss the indictments against McNeill. (C.R. 19-26.) Nothing in the record indicates that the State disputed any of the chronology provided in McNeill's motion to dismiss.
 1. On April 1, 1995, McNeill was arrested on charges of rape and sexual abuse in the first degree. These charges arose out of allegations that McNeill had engaged in sexual intercourse with, and had otherwise sexually abused, A.H., the 12-year-old daughter of McNeill's girlfriend, C.W.
 2. On April 28, 1995, C.W. made a written request to the Montgomery County District Attorney's Office, asking that the charges against McNeill be dropped on the grounds that the victim was emotionally unstable and unable to give testimony at a court hearing. (C.R.35-36) The State subsequently filed a motion to nol-pros the charges against McNeill, which was granted one day before the preliminary hearing was scheduled to be held.
 3. On May 26, McNeill was indicted by a Montgomery County Grand Jury on the same charges that had previously been nol-prossed. The case was assigned to the Circuit Court of Montgomery County.
 4. On August 28, 1995, the State again moved to nol-pros McNeill's indictments; *Page 251 
the trial court apparently granted the State's motion.
 5. On October 6, 1995, the Montgomery County grand jury returned superseding indictments for the same charges that had twice been nol-prossed. The case was initially set for trial on May 19, 1996.
 6. In May 1996, the trial was continued at the request of the State because certain witnesses for the State were unavailable to testify. (R. 14.) The trial was subsequently set for September 23, 1996.
 7. On September 20, 1996, the State again moved for a continuance, contending that the alleged victim was too emotionally distraught to testify on the trial date. At a pretrial hearing on September 23, 1996, The trial court offered to evaluate the merits of the State's motion to continue by examining the child, but the State refused. The trial court denied the State's motion to continue.
 8. This second indictment culminated in the court's refusing to nol-pros and thereafter dismissing the case with prejudice.
 9. Choosing not to appeal the court's order, the State then reindicted McNeill; those charges were dismissed on June 13, 1997, and this appeal followed.
Having completed the overview of the four criminal proceedings that resulted in three indictments and that arose out of a particular incident between McNeill and A.H., we now turn to the proceedings surrounding the second and third indictment and what occurred after the court denied the State's motion to continue.
The State attempted to nol-pros the second indictment, with leave to reindict. The following, in pertinent part, is the discussion of that attempt:
 "THE COURT: Well, [prosecutor], you're telling me a lot and you're saying a lot of things, but my job is to sit here — I'm ready for trial. Now is the case going to trial?
 "[PROSECUTOR]: No, sir. I'll have to nol-pros and reindict . . .
 "THE COURT: Well, I won't take a nolle pros. If you're not ready, then . . .
"[PROSECUTOR]: That's my prerogative.
 "THE COURT: Well, I don't have to grant it. I don't have to grant it or not grant it. It's my prerogative to grant it or not grant it.
". . . .
 "THE COURT: Then I have to dismiss the case. That's just the way it has to happen.
 "[PROSECUTOR]: No, sir. Your honor, the State moves to nol-pros. These are serious charges, your honor.
". . . .
 "THE COURT: [Prosecutor], this case has been set for trial since June or July, for August and for September.
". . . .
"[PROSECUTOR]: The State moves to nol-pros.
"THE COURT: No.
". . . .
 "[DEFENSE]: And the defense is ready to go to trial. I just wanted our position to be clear that we move for a dismissal at this point based on the grounds as asserted in my previously filed motion; and in addition to that, on the inability or the failure of the State to go forward with its burden of proof.
 "[PROSECUTION]: They can't show prejudice particularly because of his actions. It's [the defendant's] fault and any appellate court will say the same thing.
 "THE COURT: The appellate court will have to say it. I'm not going to allow a nol pros.
". . . .
 "THE COURT: I am not going to allow the case to be nol-prossed. I will do whatever the appellate court says to do, [prosecutor].
". . . .
 "[PROSECUTOR]: Your honor, there is no motion to nol-pros. The State just nol-prosses.
 "THE COURT: The court will not grant that motion. The court will dismiss this case for lack of prosecution. You can go to the appellate courts. If the appellate *Page 252 
courts say that's not the proper way to do it, I will do what the appellate courts say."
(R., I[1], 7, 8, 9, 11, 12, 19, 20.)
The State did not file a notice of appeal; rather, it again submitted McNeill's case to a grand jury, which returned the present indictment against McNeill on October 16, 1996. McNeill then filed a motion to dismiss the new charges on the ground that the case had been previously dismissed. On June 13, 1997, the trial court held a hearing and dismissed the case against McNeill based upon the previous dismissal. Specifically, the trial court stated:
 "I dismissed this case [on September 23, 1996] and invited you [the prosecution] to go to the Court of Appeals and take a mandamus and do anything you wanted to do. You didn't do it. There is a difference between nol-pros and dismissal. . . . This indictment is dismissed. . . ." (R. II[2], 11.)
The State, as well as the district attorney's office, has filed a brief with this court. It appears that it is contending that when the trial court dismissed the case on September 23, 1996, it was, in essence, nol-prossing the case and that, therefore, the State could reindict McNeill at a later date. McNeill contends that the trial court was clear that it would not allow the case to be nol-prossed, and that it was dismissing the case. In other words, McNeill contends that this case was "over" and, although the State could have appealed the trial court's order, it could not reindict McNeill.
The State appeals from the June 13, 1997, order of dismissal. The only issue properly before this court is whether the trial court erred in dismissing the case against McNeill on June 13, 1997. There was no appeal from the trial court's order of September 23, 1996; that ruling is not before us. In other words, the question whether the trial court abused its discretion by denying the State's motion to continue and dismissing the case on September 23, 1996, is not before this court. Rather, the question before us is whether the State may reindict a defendant when the trial court refuses to nol-pros the defendant's case, dismisses it, and the State fails to appeal from the dismissal of the case.
Our research in this area has been complicated because the terms "nol-pros" and "dismissal" are used interchangeably; although the terms have been used indiscriminately, even by this court, there is a distinction. The entry of a nolleprosequi, or a "nol pros" in a criminal case is a termination of the particular prosecution for that charge, but it does not bar later proceedings. Williams v. State, 494 So.2d 819
(Ala.Cr.App. 1986). However, a case cannot be nol-prossed without the consent of the trial court. Lacy v. State,13 Ala. App. 267, 69 So. 244 (1915), aff'd, 195 Ala. 668,70 So. 272 (Ala. 1915).
That this concept is so basic perhaps explains why there is not a great deal of case law in this area. Section 15-8-130, Ala. Code, 1975, is very clear that an indictment cannot be quashed, dismissed, discontinued, or abandoned without the permission of the court. Whether to allow a nol pros is a matter within the sound discretion of the trial court.Lacy, supra. One federal court has held that a provision similar to § 15-8-130, which required "leave of court" before a criminal prosecution could be dropped, was intended to prevent abuse of the broad discretion given to prosecutors.
 "[T]he phrase 'by leave of court' . . . was intended to modify and condition the absolute power of the Executive, consistently with the Framer's concept of Separation of Powers, by erecting a check on the abuse of executive prerogatives. But this is not to say that the rule was intended to confer on the Judiciary the power and authority to usurp or interfere with the good faith exercise of the Executive power to take care that the laws are faithfully executed. The Rule was not promulgated to shift absolute power from the Executive to the Judicial Branch. Rather, it was intended as a power to check power. The Executive remains the absolute judge of whether a prosecution should be initiated and the first and presumptively the best judge of whether a pending prosecution should be terminated. The exercise of its discretion with respect to the termination of pending *Page 253 
prosecutions should not be judicially disturbed unless clearly contrary to manifest public interest. In this way, the essential function of each branch is synchronized to achieve a balance that serves both practical and constitutional values."
United States v. Cowan, 524 F.2d 504, 513 (5th Cir. 1975), cert.denied, 425 U.S. 971, 96 S.Ct. 2168, 48 L.Ed.2d 795 (1976).
In the final analysis, a defendant ultimately has the right to have a final disposition of the charges against him. In addition, the court also is responsible for the best use of judicial resources. Once a case is set, the court expects both sides to proceed. If one does not, the trial court, within its wide discretion, then decides if the case is to be continued.Busby v. State, 412 So.2d 837, 842 (Ala.Crim.App. 1982).
"There are dismissals that 'contemplate that the proceedings will terminate then and there in favor of the defendant' because the defect . . . constitutes a permanent bar to prosecution of that charge." W. LaFave, Criminal Procedure § 25.3(a) (2d ed. 1992); United States v. Scott, 437 U.S. 82, 94,98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978), on remand,579 F.2d 1013, cert. denied, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486
(1979). While it is the duty of the district attorney to decide whether a criminal act shall be prosecuted, once a warrant or indictment has been initiated, the trial court has the final authority regarding the ultimate disposition of the case. The State could not, on its own prerogative, nol-pros the case against McNeill and then reindict him. It clearly had to have the trial court's permission to nol-pros the case if it intended to reindict McNeill. In denying the motion to nol-pros and thereafter dismissing this case, the trial court was very clear that it intended his order to be a final disposition of the cases arising from the alleged rape of the child in 1995. The trial court did not intend that the State would be allowed to reindict McNeill at some later time. The trial court was clear that if the State had any problems with its ruling, it should file an appeal with this Court. Had the State, pursuant to Rule 15.7, Ala.R.Crim.P., filed a timely appeal, this Court could have addressed the merits of the trial court's refusing to grant a continuance and dismissing the case. Because no appeal was taken from the September 23, 1996, order of dismissal, this court must affirm the June 13, 1997, dismissal.
AFFIRMED.
All the Judges concur.
BROWN, J., concurs specially with opinion.
[1] "R. I" refers to the transcript of the September 23, 1997, hearing.
[2] "R. II" refers to the transcript of the June 13, 1997, hearing.