IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

January 28, 2025 03:27 PM
SCT-CRIM-2017-0018
**VERONICA HANDY, ESQUIRE**
**CLERK OF THE COURT**

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **LLOYD S. WILKINSON,**<br>Appellant/Defendant,<br><br>v.<br><br>**PEOPLE OF THE VIRGIN ISLANDS,**<br>Appellee/Plaintiff. | )   **S. Ct. Crim. No. 2017-0018**<br>)   Re: Super. Ct. Crim. No. 062/2015 (STT)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Kathleen Mackay

Argued: July 9, 2019
Filed: January 28, 2025

Cite as 2025 VI 4

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and
**IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Amelia B. Joseph, Esq.**
Territorial Public Defender's Office
St. Croix, U.S.V.I.
    *Attorney for Appellant,*

**Su-Layne Walker, Esq. (Argued).**
**Ian S. A. Clement, Esq.**
Assistant Attorney General
St. Thomas, U.S.V.I.
    *Attorneys for Appellee.*

## OPINION OF THE COURT

**CABRET, Associate Justice.**

¶1      Appellant Lloyd S. Wilkinson ("Wilkinson") appeals his sentence for first degree unlawful sexual contact in violation of Title 14 V.I.C. § 1708(a)(1), arguing that, following our decision in

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 2 of 26

2025 VI 4

*Titre v. People,* 70 V.I. 797 (V.I. 2019), his conviction on this charge must be vacated in accordance with the requirements of 14 V.I.C. § 104 and the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. Additionally, Wilkinson appeals his conviction for first degree rape in violation of 14 V.I.C. §1701(a)(2), arguing that § 1701 is unconstitutionally underinclusive. Specifically, he contends that § 1701 violates his Fourteenth Amendment right to equal protection under the law because subsection (c) of the statute creates a marital exemption from the crime of first degree rape that unreasonably and arbitrarily subjects him to punishment for his conduct, while others who engage in the same conduct prohibited by the statute are exempt from punishment merely because they are married to the victim. For the reasons that follow, we vacate Wilkinson's conviction for first degree unlawful sexual contact and remand this matter to the Superior Court for resentencing. Additionally, although we agree with Wilkinson that the marital exemption provided in the first degree rape statute violates the equal protection clause of the Fourteenth Amendment, we hold that the appropriate remedy is to strike subsection (c) from the statute and affirm his conviction for first degree rape under the remaining subsections of § 1701.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶2     Following a jury trial on October 17, 2016, Wilkinson was found guilty of first degree rape in violation of 14 V.I.C. § 1701(a)(2), first degree assault in violation of 14 V.I.C. § 295(3), and first degree unlawful sexual contact in violation of 14 V.I.C. § 1708(a)(1), for the rape and assault of C.D. on the morning of February 11, 2015.[1] The Superior Court, in its February 2, 2017

---

[1] We note that both the February 24, 2015 information and February 2, 2017 judgment and commitment in this case both refer to §§ 1701(2) and 1708(1), rather than to §§ 1701(a)(2) and 1708(a)(1). In 2013, 14 V.I.C. § 1701 and 14 V.I.C § 1708 were amended to include the existing numbered paragraphs within the statutes' new subsection "(a)." Act No. 7517, § 1(c)(3) (Reg. Sess. 2013). Therefore, for clarity and simplicity, throughout this opinion we refer to the statutes by their alphanumerical subsections as they appear in the current version of the Virgin Islands Code.

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 3 of 26

2025 VI 4

judgment and commitment, sentenced Wilkinson to a period of thirty years' incarceration on his conviction for first degree rape and to a period of five years' incarceration on his conviction for first degree assault, to be served consecutively. The court further sentenced Wilkinson to a period of five years' incarceration on his conviction for first degree unlawful sexual contact, but stayed imposition of the sentence. Wilkinson timely filed a notice of appeal.

## II.    JURISDICTION AND STANDARD OF REVIEW

¶ 3    We have jurisdiction over this criminal appeal pursuant to Title 4, Section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." Because the Superior Court's February 2, 2017, judgment and commitment adjudicates all charges, it is a final order within the meaning of 4 V.I.C. § 32(a). *Williams v. People*, 58 V.I. 341, 347 (V.I. 2013). We therefore have jurisdiction over this appeal. Although we generally exercise plenary review over questions of law, including constitutional questions, where an appellant fails to raise a constitutional issue before the Superior Court, our review is limited to plain error. *Celestine v. People,* 73 V.I. 500, 505 (V.I. 2020) (citing *Carty v. People*, 56 V.I. 345, 354 (V.I. 2012)).

## III.    DISCUSSION

¶4    On appeal, Wilkinson argues—and the People concede—that pursuant to our decision in *Titre,* he is entitled to resentencing to vacate his conviction for first degree unlawful sexual contact. Wilkinson also contends that 14 V.I.C. § 1701 is unconstitutionally underinclusive and therefore, that the Superior Court erred in convicting him of first degree rape under this statute. Specifically, he argues that the marital exemption provided in subsection (c) of § 1701 violates his right to equal protection of the law under the Fourteenth Amendment of the Constitution of the United States. In

response, the People contend that § 1701(c) does not constitute a martial exemption, but concede

that if it does, then § 1701 would violate the Equal Protection Clause.[2] Both parties also agree that

if we determine that the first degree rape statute is unconstitutional, the appropriate remedy is to

strike subsection (c) from the statute and uphold the remaining, constitutionally valid provisions

of § 1701. We address each argument in turn.

### A.  Resentencing in Light of *Titre v. People*

¶5      The Superior Court's February 2, 2017, judgment and commitment convicted Wilkinson

of first degree rape, first degree assault, and first degree unlawful sexual contact. The trial court

imposed sentence for the rape and assault charges while staying execution of Wilkinson's sentence

for unlawful sexual contact in accordance with the law prevailing at the time, as detailed in our

previous decision in *Williams v. People*, 56 V.I. 821, 834 n.9 (V.I. 2012) ("[T]he proper procedure

is to sentence the defendant for one offense and stay the imposition of any punishment for all the

remaining offenses which arose out of the same act or indivisible course of conduct."). However,

during the pendency of this appeal, we decided *Titre*, overruling the previous "merger-and-stay"

approach outlined in *Williams*, 56 V.I. at 834 n.9, and concluding that the better approach is to

vacate any lesser convictions that would implicate 14 V.I.C. § 104 or the double jeopardy clause

of the Fifth Amendment to the Constitution of the United States. *Titre*, 70 V.I. at 808-09.

Additionally, as we have previously explained, the rule announced in *Titre* applies retroactively to

---

[2] Although the briefs of the parties on appeal frame the issue in terms of whether § 1701(c) violates the Equal Protection Clause, this is not entirely accurate. Subsection (c) of § 1701, standing alone, clearly cannot violate the Equal Protection Clause, because subsection (c), read in isolation from the preceding subsections, neither proscribes any conduct nor provides for any form of punishment. Indeed, without subsections (a) and (b), subsection (c) would be meaningless and without legal effect, purporting to provide an affirmative defense to a nonexistent crime. More precisely then, the issue is whether § 1701, as a whole, violates the Equal Protection Clause as a result of the inclusion of the marital exemption provided in subsection (c) of the statute.

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 5 of 26

2025 VI 4

all pending cases, including this appeal. *Celestine,* 73 V.I. at 511. Accordingly, we remand this matter to the Superior Court for resentencing in accordance with our decision in *Titre.*

## B. Marital Exemption for First Degree Rape

¶6      Wilkinson argues on appeal that 14 V.I.C. § 1701(c) creates a marital exemption[3] to the crime of first degree rape that violates his rights under the equal protection clause of the Fourteenth Amendment because he is subject to punishment for his conduct "while others ... who engage in the same conduct escape punishment merely because they are married to the victim," despite the lack of any rational basis for distinguishing between these two groups. (Appellant's Br. at 13.) The People assert that § 1701(c) does not constitute a marital exemption to the rape statute and therefore does not violate the equal protection clause. Thus, our first task is to ascertain the meaning and effect of § 1701(c).

¶7      Section 1701(a) of title 14 codifies the elements of the crime of rape in the first degree, including § 1701(a)(2)—the subsection under which Wilkinson was convicted—which provides: "Whoever perpetrates an act of sexual intercourse or sodomy with a person...when the person's resistance is forcibly overcome... is guilty of rape in the first degree and shall be imprisoned not less than 10 years nor more than 30 years ...." In turn, § 1701(c) provides that "[s]pousal consent shall be an affirmative defense in the event the persons are legally married pursuant to the provisions of title 16, chapter 1 of the Virgin Islands Code."[4]

¶8      Our interpretation of any statute begins with the plain and ordinary meaning of the statutory language. *Thomas v. People,* 69 V.I. 913, 923 (V.I. 2018). "If the statutory language is

---

[3] The term "marital exemption" is used in this context, as it has often been used by jurists and legal scholars, to describe a statutory provision that exempts married persons from punishment for raping or sexually assaulting their spouses.

[4] Section 1701(b) provides for heightened punishment of repeat offenders and is not relevant to the issues raised in this appeal.

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 6 of 26

2025 VI 4

unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *In re L.O.F.*, 62 V.I. 665, 661 (V.I. 2015). However, "[t]echnical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to their peculiar and appropriate meaning." *Willis v. People*, 71 V.I. 789, 797 (V.I. 2019) (quoting *Thomas*, 69 V.I. at 923). In analyzing a statute, "we must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it—or another provision—wholly superfluous and without an independent meaning or function of its own." *Thomas*, 69 V.I. at 924 (internal quotation marks omitted). Additionally, even "where a statutory scheme is plain and internally consistent, no statute should be read literally if such a reading is contrary to its objective and this Court must consider whether applying the statute's literal language leads to absurd consequences or is otherwise inconsistent with the Legislature's intent." *Heyliger v. People*, 66 V.I. 340, 350 (V.I. 2017).

¶9    Here, the People assert, in somewhat conclusory fashion, that the relevant language— "spousal consent shall be an affirmative defense..."— does not create a marital exemption to the rape statute. The People concede that the language of § 1701(c) "may not be ideal," but insist that it cannot constitute a marital exemption because the synopsis of the legislative act adding subsection (c) describes the act as "adding protection for spouses, men and women, who are the victims of actions that constitute rape or unlawful sexual contact in aggravated domestic violence instances." Act No. 7517, preamble. However, the descriptive synopsis or preamble included in a legislative bill, much like the titles and headings of the statute itself, while potentially probative of the legislature's intent, is not a part of the statute and therefore does not carry the force of law. *See* 1 V.I.C. § 45(a)(2)-(3) ("The following matter does not constitute part of the law ... the descriptive headings or catchlines, other than the section numbers contained therein, immediately preceding

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 7 of 26

2025 VI 4

the texts of the individual sections of this Code; [and] any descriptive headings or catchlines immediately preceding the texts of any subsections or paragraphs of sections of this Code."); *Den v. Urison*, 2 N.J.L. 212, 219-20 (1807) (observing that the "preamble cannot restrain or control" the "expressed intentions of the [l]egislature" as indicated by the words of an Act that are contained in one or more of its enactment clauses,[5] but that the preamble may be consulted to gain insight where the intention of the legislature, based on the language appearing in an enactment clause, is equivocal); *In re Allen*, 1 V.I. 212, 227–28 (D.V.I. 1929) (observing that "[w]here a statute is of doubtful meaning and susceptible upon its face of two constructions the court may look into prior and contemporaneous [legislative] acts, the reasons which induced the act in question, the mischiefs intended to be remedied [by it], the extraneous circumstances, and the purpose intended to be accomplished by it, to determine its proper construction," but also that "where the [legislative] act is clear upon its face, and when standing alone it is fairly susceptible of but one construction, that construction must be given it," and further emphasizing that "reasons for and the significant circumstances leading up to the enactment may be noticed in confirmation of the meaning conveyed by the words used" in it).[6]

¶10    Although the People fail to offer any suggestion as to how the language of § 1701(c) might be interpreted in a manner that would not create a marital exemption to the rape statute, at least one such possible interpretation may be drawn from the plain and literal meaning of the statutory language itself. Putting aside the legal and historical underpinnings of the notion of spousal or

---

[5] The enactment clause of legislation "denote[es] that an act is taking effect as law[; t]he most common enacting words are 'Be it enacted that ....'" Black's Law Dictionary 606 (9th ed. 2009).

[6] The People also argue that because Act No. 7517 eliminated from the first degree rape statute the requirement that the victim be "a person not [the perpetrator's] spouse," we should conclude, despite the addition of § 1701(c), that the Legislature intended to eliminate any marital exemption from the statute. Curiously, while it is true that prior to the 2013 amendments, several sections of title 14, chapter 85, including § 1700 (aggravated rape in the first degree), § 1700a (aggravated rape in the second degree), § 1702 (rape in the second degree), and § 1703 (rape in the third degree), contained the "person not his spouse" language, it appears that § 1701 never included such language.

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 8 of 26

2025 VI 4

matrimonial consent, in the ordinary usage of the English language, devoid of context, the term spousal consent may reasonably be interpreted literally, to mean simply the consent of the spouse. Consent, in turn, is defined as: "[C]ompliance in or approval of what is done or proposed by another;... the voluntary agreement or acquiescence by a person of age or with requisite mental capacity who is not under duress or coercion and [usually] who has knowledge or understanding...." Merriam–Webster's Dictionary of Law 97 (Collector's ed. 2005). Similarly, Black's Law Dictionary defines consent as "A voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose, esp[ecially] given voluntarily by a competent person; legally effective assent." Black's Law Dictionary 380 (11th ed. 2019). Thus, interpreting the term spousal consent literally, § 1701(c) would essentially provide that a married individual cannot be punished for "perpetrat[ing] an act of sexual intercourse or sodomy with [his or her spouse]" under the circumstances described in § 1701(a)(2) if he or she proves that his or her spouse voluntarily agreed to engage in that act.

¶11    Upon closer examination however, this literal interpretation of § 1701(c) fails to withstand scrutiny under the canons of statutory construction as it either leads to absurd results that the Legislature could not have intended, or alternatively, renders § 1701(c) superfluous or without meaning when paired with the language of § 1701(a)(2). We have previously observed that consent is a defense to first degree rape. In *Williams v. Gov't of the V.I.*, 55 V.I. 721 (V.I. 2011), the appellant argued that the trial court erred in failing to instruct the jury separately on the defense of consent. However, we explained that in cases of first-degree rape, "the concept of consent is inherently addressed in the elements of the crime charged." *Id.* at 729 (citing *United States v. Martin*, 528 F.3d 746 (10th Cir. 2008)). "Although the language of section [1701(a)(3)] is devoid of the words 'consent' and 'lack of consent,'" the statutory language, 'when the person's resistance

is prevented by fear of immediate and great bodily harm,' is synonymous with a 'lack of consent.'"

*Id*. at 729-30. Therefore, we concluded that the trial court's jury instruction sufficiently stated the

law and was not plainly erroneous. *Id*. at 732.

¶12    Here, the distinguishing element of first degree rape under § 1701(a)(2)—specifically

"when the person's resistance is forcibly overcome"—just like the distinguishing element of §

1701(a)(3) as discussed in *Williams*, necessarily implies a lack of consent. Conversely then, a

showing of consent necessarily negates the element of overcoming forcible resistance in §

1701(a)(2) just as consent necessarily negates the element of preventing resistance by fear in §

1701(a)(3). Thus, because a showing of consent negates an essential element of the crime, consent

constitutes a classic, common law defense to first degree rape in violation of §§ 1701(a)(2) and

1701(a)(3).

¶13    Yet, if consent constitutes a general defense to first degree rape irrespective of any marital

relationship between the perpetrator and the victim, then the literal interpretation of § 1701(c)—

providing that the victim's voluntary agreement to the sexual act constitutes an *affirmative* defense

to a charge of first degree rape in the event that the perpetrator and the victim are legally married—

produces an absurd result, insofar as consent must be presented as an affirmative defense in cases

of spousal rape, but remains an ordinary, common law defense to rape in all other cases. As

affirmative defenses -- in contrast to ordinary, common law defenses -- require a defendant to

affirmatively plead and prove a set of facts to defeat the legal consequences of his or her otherwise

unlawful conduct, this literal interpretation of § 1701(c) would seemingly shift the burden of proof

as to an essential element of the crime in spousal rape cases from the prosecution to the defendant;

effectively requiring the accused to prove his or her innocence. Given that the presumption of

innocence is axiomatic to our system of criminal justice, there can be no doubt that the Legislature

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 10 of 26

2025 VI 4

did not intend to produce this absurd result in enacting § 1701(c). *See Milligan v. People*, 69 V.I. 779, 786 n.4 (V.I. 2018) (collecting cases affirming the essential, fundamental role of the presumption of innocence in the criminal justice system).

¶14     Additionally, if the term spousal consent is interpreted literally, then the provisions of § 1701(c) are facially irreconcilable with the provisions of § 1701(a)(2), rendering one of the two provisions superfluous and devoid of any real meaning or effect. Because a showing of consent negates any showing that the victim's resistance was forcibly overcome and vice versa, the statute cannot simultaneously require that the prosecution prove that the victim's resistance was forcibly overcome and that the defendant prove that his or her spouse consented. Simply put, the statute cannot place the burden of proof as to an essential element of the crime on both the prosecution and the defendant at the same time. Giving effect to the literal meaning of § 1701(c) by requiring defendants to affirmatively prove consent in spousal rape cases would effectively relieve the prosecution of its burden to prove that the victim's resistance was forcibly overcome and, consequently, render § 1701(a)(2) a nullity. Conversely, upholding the prosecution's burden to prove that element would necessarily eliminate any requirement that the defendant affirmatively prove consent, essentially reading the word "affirmative" out of § 1701(c). In turn, if spousal consent—literally meaning the voluntary agreement of the spouse—merely constitutes a traditional, common law defense to rape, then the word "spousal" in the term spousal consent is also bereft of any meaningful effect because, as we explained in *Williams*, consent constitutes a defense to rape regardless of the existence of any marital relationship between the perpetrator and the victim. In effect, § 1701(c)—providing that "Spousal consent shall be an affirmative defense in the event the persons are legally married pursuant to the provisions of title 16, chapter 1 of the Virgin Islands Code"—would stand for nothing more than the unremarkable proposition, already

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 11 of 26

2025 VI 4

implicit in the language of § 1701(a)(2), that "consent shall be a defense." Accordingly, because

the literal interpretation of §1701(c) either produces absurd results or renders significant portions

of the other statutory language superfluous, we do not hesitate to reject it as applied to prosecutions

under § 1701(a)(2).

¶15    Instead, we must turn to the peculiar historical and legal meaning of the term "spousal

consent". That is, a wife's automatic, continuous, and irrevocable consent to sexual contact with

her husband implied solely by virtue of her marriage. Although shocking and offensive to the

modern conscience, this conception of spousal or matrimonial consent has, until recent decades,

largely persisted and survived in American criminal codes and judicial opinions as a kind of

vestigial remnant of archaic, draconian notions of matrimonial and property rights derived from

the common law of old England.[7] The origins of the concept of spousal consent trace back to a

treatise written by the seventeenth century English jurist, Matthew Hale, in which he discussed the

crime of rape and potential defenses. He opined: "But the husband cannot be guilty of a rape

committed by himself upon his lawful wife, for by their mutual matrimonial consent and contract

the wife hath given up herself in this kind unto her husband, which she cannot retract." 1 MATTHEW

HALE, HISTORY OF PLEAS OF THE CROWN 629 (Giles Jacob ed. 1716). It is worth noting that Hale

cited no authority for this supposed rule, that no support for this rule has been found in the work

of earlier jurists, and that even Blackstone, writing in the following century, made no mention of

---

[7] Since the 1980's, with a single exception discussed below, every court that has considered a challenge to this type of marital exemption, whether as a matter of common law or in the context of a constitutional challenge to a criminal statute, has struck down these marital exemptions for violating equal protection rights or for simply lacking any defensible justification in the modern common law. Nonetheless, as of 2011, only fourteen states had completely abolished all forms of marital immunity for sexual offenses, eschewing any distinction in the treatment of sex offenses committed between married persons and those committed between non-married persons, while thirty-five states and the District of Columbia retained some form of marital exemption—often eliminating marital exemptions for crimes involving forcible sexual penetration, but preserving marital immunity for other sexual crimes not involving penetration. *See* John F. Decker & Peter G. Baroni, "No" Still Means "Yes": The Failure of the "Non-Consent" Reform Movement in American Rape and Sexual Assault Law, 101 J. CRIM. L. & CRIMINOLOGY 1081, 1155 (2011).

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 12 of 26

2025 VI 4

matrimonial consent despite discussing other statements made by Hale. *See State v. Smith*, 426 A.2d 38, 41 (N.J. 1981) (discussing the history of the marital exemption to the crime of rape at English common law). Nonetheless, beginning with a decision of the Supreme Judicial Court of Massachusetts in 1857, courts across the nation adopted and incorporated Hale's concept of matrimonial consent into the common law of their respective jurisdictions. *See People v. Liberta*, 474 N.E.2d 567, 572 (N.Y. 1984) (citing *Commonwealth v Fogerty*, 74 Mass. 489 (1857)) (examining the history of the adoption of the marital consent doctrine by various jurisdictions in the United States). Since the time of Hale and even into the modern era, legal commentators have repeatedly restated the spousal consent rule, albeit without any discussion of its merits. *See Smith*, 426 A.2d at 41 (collecting sources).

¶16    Thus, given the long history of the use of the term "spousal consent"—or equivalent terms such as matrimonial consent—in the common law of England and of the states and territories of the United States, the canons of statutory construction compel us to interpret the term "spousal consent" as used in § 1701(c) according to its peculiar and appropriate legal meaning: a wife's irrevocable consent to sexual contact with her husband implied by law solely by virtue of her marriage. Interpreting the statute in accordance with this historical, legal meaning of spousal consent, the meaning and effect of § 1701(c) may fairly be summarized as follows: an individual may not be found guilty of first degree rape if that individual affirmatively proves that the victim is his or her spouse because the law deems a spouse to have consented to such sexual conduct by virtue of his or her marriage.[8] Thus, there can be no question that § 1701(c) constitutes a marital

---

[8] Because spousal consent, used in the historical, literal sense of the term, is implied by law upon proof of marriage regardless of whether the victim spouse voluntary agreed to engage in the particular sexual conduct at issue, the historical interpretation avoids the problems and contradictions in the statutory scheme—particularly with respect to burdens of proof—that arise from the literal interpretation discussed above. There is no logical contradiction in

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 13 of 26

2025 VI 4

exemption to the crime of first degree rape, as it provides married individuals immunity from punishment for otherwise unlawful sexual conduct, upon a simple showing that the individual is legally married to his or her victim.[9]

## C. Equal Protection

¶17 Having established that § 1701(c) creates a marital exemption to the crime of first degree rape, we must next determine whether the marital exemption provided in subsection (c) renders § 1701 unconstitutionally underinclusive in violation of the Equal Protection Clause of the Fourteenth Amendment. Wilkinson argues that the first degree rape statute is unconstitutionally underinclusive because he is subject to punishment under the statute for his conduct, while others who engage in the same conduct prohibited by the statute avoid punishment merely because they are married to their victims. (Appellant's Br. at 13.) The People concede that, if § 1701(c) constitutes a marital exemption to the crime of first degree rape, that exemption violates the Equal Protection Clause of the Fourteenth Amendment and should be stricken from the statute. (Appellee's Br. at 9.) Despite this concession, given the "great gravity and delicacy" with which we must approach any potential invalidation of a legislative enactment, we must carefully examine Wilkinson's argument to ascertain, for ourselves, whether the first degree rape statute, with its marital exemption, violates the Equal Protection Clause. *See Azille v. People*, 59 V.I. 215, 227

---

requiring the prosecution to prove that the victim's resistance was forcibly overcome, while also requiring the accused to prove that he or she is married to the victim in order to avail himself or herself of the affirmative defense of spousal consent.

[9] While there is arguably a distinction to be drawn between statutes like § 1701(c) that establish a marital exemption as an affirmative defense, and those that expressly define sexual crimes as crimes committed against "a person not his spouse," there is ultimately little, if any, practical difference. In the former case, the accused bears the burden of proving that he or she is married to the victim, while in the latter, the prosecution must prove that the accused is not married to the victim as an element of the crime. In the end however, the result is the same no matter where the burden of proof lies: the law allows the married individual to avoid punishment for nonconsensual sexual conduct perpetrated upon his or her spouse.

(V.I. 2012) (quoting *Ashwander v. Tennessee Valley Auth.*, 297 U.S. 288, 345–46 (1936) (Brandeis, J., concurring)).

¶18     The Equal Protection Clause of the Fourteenth Amendment prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. The Revised Organic Act of 1954 specifically extends the protections of the Fourteenth Amendment's Equal Protection Clause to the Virgin Islands. 48 U.S.C. § 1561. "The Equal Protection Clause guarantees United States citizens a 'right to be free from invidious discrimination in statutory classifications and other governmental activity,'" *Fleming v. Cruz*, 62 V.I. 702, 716 (V.I. 2015), and "is essentially a direction that all persons similarly situated should be treated alike." *Webster v. People*, 60 V.I. 666, 673 (2014) (quoting *Lawrence v. Texas*, 539 U.S. 558, 579 (2003)). Generally, unless the challenged statute draws inherently suspect classifications warranting heightened scrutiny such as those based upon race, alienage, and national origin, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (citations omitted). Because no suspect class is implicated by § 1701, the statute is only subject to rational basis review.

¶19     While the Equal Protection Clause does not prohibit the territorial Legislature from enacting laws that treat different classes of people in different ways, it denies the Legislature "the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute." *Eisenstadt v. Baird*, 405 U.S. 438, 447 (1972). Additionally, the Equal Protection Clause demands that classifications must "be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 15 of 26

2025 VI 4

be treated alike." *Id.* (quoting *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)). In the specific context of equal protection challenges to statutory classifications based upon marital status, the relevant question "is whether there is some ground of difference that rationally explains the different treatment accorded married and unmarried persons" under the challenged statute. *Id.*; *see also Liberta*, 474 N.E.2d at 573.

¶20     For the reasons discussed below, we conclude that there is no rational basis for treating marital rape differently from nonmarital rape in the eyes of the law. As poignantly summarized by the New York Court of Appeals, "[t]he various rationales which have been asserted in defense of the exemption are either based upon archaic notions about the consent and property rights incident to marriage or are simply unable to withstand even the slightest scrutiny." *Id.* Accordingly, we declare the marital exemption to the crime of first degree rape codified at 14 V.I.C. § 1701(c) unconstitutional, as it violates the Equal Protection Clause of the Fourteenth Amendment.

¶21     Wilkinson's equal protection argument is drawn, almost entirely, from *Liberta*, in which the New York Court of Appeals held that the marital exemption in New York's forcible rape statute violated the Equal Protection Clause. While *Liberta* was the first decision to strike down a statutory marital exemption for sexual offenses on equal protection grounds, courts in other jurisdictions have since followed the paradigm set by the New York Court of Appeals in declaring their own respective marital exemptions unconstitutional.[10] *See, e.g., Williams v. State*, 494 So. 2d 819, 826 (Ala. Crim. App. 1986) (declaring marital exemption to forcible sodomy statute unconstitutional); *Merton v. State*, 500 So.2d 1301, 1302–05 (Ala. Crim. App. 1986) (declaring marital exemption

---

[10] The *Liberta* decision, itself, drew heavily upon the reasoning of the Supreme Court of New Jersey in *State v. Smith*, 426 A.2d 38, 41 (N.J. 1981), in which that court became the first to reject the marital exemption as a matter of common law. Several courts in other jurisdictions have similarly followed the approach of the *Smith* court. *See, e.g., State v. Rider*, 449 So. 2d 903, 904 (Fla. Dist. Ct. App. 1984); *Commonwealth v. Chretien*, 417 N.E.2d 1203, 1207-10 (Mass. 1981); *State v. Willis*, 394 N.W.2d 648, 650-51 (Neb. 1986); *Shunn v. State*, 742 P.2d 775, 778 (Wyo. 1987).

to forcible rape statute unconstitutional); *People v. M.D.*, 595 N.E.2d 702, 708 (Ill. App. Ct. 1992) (declaring marital exemption to criminal sexual assault statute unconstitutional). We, in turn, follow the lead of these persuasive decisions in critically evaluating the various rationales that have been put forth to justify the different treatment of marital rape and nonmarital rape in the criminal law.

¶22    There are three traditional justifications for exempting married men from punishment for sexual offenses committed against their wives. The first is Hale's conception of implied matrimonial consent outlined above, in which the law deems a wife to have perpetually and irrevocably consented to sexual intercourse with her husband at the time of their marriage. Hale's implied consent theory, in turn, appears to be derived from the other two archaic common law doctrines traditionally offered to justify the marital exemption: that a woman was the property of her husband and that the legal existence of a woman was "incorporated and consolidated into that of her husband." *Liberta,* 474 N.E.2d at 573 (quoting 1 WILLIAM BLACKSTONE'S COMMENTARIES 430 (1966 ed.)).

¶23    However, these antiquated doctrines simply have no place in modern society, let alone in the law of the Virgin Islands, as they are repugnant and antithetical to our shared values and to our contemporary understanding of personal liberty and basic human rights. Indeed, in refusing to adopt the amatory torts of alienation of affections and criminal conversation, this Court has previously recognized, together with the vast majority of American jurisdictions, that legal theories, precepts, and doctrines grounded in the draconian idea that wives are the property of their husbands must be eschewed and excised from the law wherever they are found. *See Matthew v. Herman,* 56 V.I. 674, 683-84 (V.I. 2012) (refusing to recognize the amatory torts "because they are based on antiquated concepts of women as property and are destructive to existing marriages").

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 17 of 26

2025 VI 4

As the Supreme Court of the United States has observed: "Nowhere in the common-law world— indeed in any modern society—is a woman regarded as chattel or demeaned by denial of a separate legal identity and the dignity associated with recognition as a whole human being." *Trammel v. United States*, 445 U.S. 40, 52 (1980).

¶24　Rape, particularly forcible rape, is "a degrading, violent act which violates the bodily integrity of the victim and frequently causes severe, long-lasting physical and psychic harm," and the suggestion that the law should ever imply an individual's consent to rape is plainly absurd. *Liberta,* 474 N.E.2d at 573 (citations omitted). Such an implied consent rule would effectively give one spouse the control over the other spouse's bodily integrity. *Weishaupt v. Commonwealth*, 315 S.E.2d 847, 402 (Va. 1984). The Supreme Court of the United States has described the crime of rape as "highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established." *Coker v. Georgia*, 433 U.S. 584, 597 (1977). The fact that an individual perpetrates a rape against his or her spouse rather than against a stranger does not make those actions any less reprehensible or, in any way, lessen the catastrophic damage inflicted upon the personal integrity and autonomy of the victim. Thus, we unequivocally reject these traditional justifications for the marital exemption to the crime of rape, as they fail to provide any rational explanation for allowing a married individual to escape punishment for rape merely because the victim is his or her spouse.

¶25　Additionally, there are four, more modern rationales that courts have examined in recent years as potential justifications for retaining the marital exemption. The first of these, as argued by the prosecution in *Liberta*, is that the marital exemption protects against government intrusion into marital privacy. 474 N.E.2d at 574. However, every court to consider the issue has found that

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 18 of 26

2025 VI 4

the right to marital privacy, first recognized by the United States Supreme Court in *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965), protects only private, consensual, marital relations and does not extend to violent sexual acts. *See, e.g., Cotner v. Henry*, 394 F.2d 873, 875 (7th Cir. 1968) ("The import of the Griswold decision is that [only] private, consensual, marital relations are protected from regulation by the State through the use of a criminal penalty."); *State v. Bateman*, 547 P.2d 6, 9-10 (Ariz. 1976) (holding that marital privacy rights are not violated by husband's conviction for forcing an act of sodomy upon his wife); *Williams*, 494 So.2d at 828; *People v. M.D.*, 595 N.E.2d at 190-91; *Liberta*, 474 N.E.2d at 573-74. Thus, while the government certainly has a legitimate interest in protecting spouses' marital privacy rights, there is no rational connection between the protection of these interests and the legislative determination that a married individual should be allowed to rape his or her spouse with impunity. "Just as a husband cannot invoke a right of marital privacy to escape liability for beating his wife, he cannot justifiably rape his wife under the guise of a right to privacy." *Liberta*, 474 N.E.2d at 574.

¶26    The next argument in favor of the marital exemption is that it promotes reconciliation of spouses and avoids disruptions to the marriage that would be caused by criminal proceedings. This argument defies reason. It is absurd to suggest that prosecuting an individual for the crime of forcible rape against his or her spouse would cause any more disruption of a marriage than had already been caused by the violent act itself. *Weishaupt*, 315 S.E.2d at 405. Furthermore, if a marriage has already degraded to the point where sexual relations are accomplished by forcible, nonconsensual intercourse, it is doubtful that there is anything left of the harmony of the marital relationship to reconcile. *Id.; see also Trammel*, 445 U.S. at 52 ("When one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony... to preserve.").

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 19 of 26

2025 VI 4

¶27    Another rationale asserted by proponents of the marital exemption focuses on the difficulty of proving marital rape and suggests that the marital exemption furthers the government's interest in preventing prosecutions based upon the fabricated complaints of vengeful or vindictive spouses. As explained by the Supreme Court of Colorado in *People v. Brown*, the only modern case upholding a marital exemption in the face of an equal protection challenge: "the marital exception averts difficult emotional issues and problems of proof inherent in this sensitive area. Otherwise juries would be expected to fathom the intimate sexual feelings, frustrations, habits, and understandings unique to particular marital relationships." 632 P.2d 1025, 1027 (Colo. 1981). Clearly, the "inherent problems of proof" to which the court alluded in *Brown*, are the well-known difficulties associated with proving lack of consent that have been discussed and debated by jurists and legal scholars for decades. However, as other courts have noted, proving lack of consent is often the most difficult aspect of prosecuting any rape case in which the alleged perpetrator has had a prior consensual sexual relationship with the victim, regardless of whether they were married or unmarried. *See People v. M.D.*, 595 N.E.2d at 712; *Williams*, 494 So. 2d at 829; *Liberta*, 474 N.E.2d at 574. Additionally, there is no reason to believe that married persons are any more likely to file false complaints than unmarried persons. And, as the court observed in *Liberta*: "The criminal justice system, with all of its built-in safeguards, is presumed to be capable of handling any false complaints. Indeed, if the possibility of fabricated complaints were a basis for not criminalizing behavior which would otherwise be sanctioned, virtually all crimes other than homicides would go unpunished." 474 N.E.2d at 574. Thus, although the government undoubtedly has an interest in ensuring that criminal convictions are based upon credible evidence, we can discern no manner in which providing a marital exemption for first degree rape rationally furthers that interest.

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 20 of 26

2025 VI 4

¶28 The final rationale often advanced in support of the marital exemption is that it results from a legislative determination that marital rape somehow constitutes a less serious crime than nonmarital rape, and is therefore adequately addressed by the possibility of prosecuting the offending spouse under other criminal statutes, such as assault statutes, which carry appropriately less severe penalties. However, there is no evidence to suggest that marital rape has less severe consequences, either for the victim or for society, than nonmarital rape, and therefore no logical basis for classifying marital rape as a less serious offense. In fact, "numerous studies have shown that marital rape is frequently quite violent and generally has more severe, traumatic effects on the victim than other rape," because the perpetrator is someone with whom the victim once shared a loving, trusting, intimate relationship. *See Liberta,* 474 N.E.2d at 574-75 (collecting sources). Furthermore, the very existence of our first degree rape statute and the severe penalties prescribed therein demonstrates legislative recognition that the nature of the harm caused by forcible rape is categorically different, and more severe, than that caused by ordinary assault. *See People v. M.D.,* 595 N.E.2d at 712; *Williams*, 494 So. 2d at 829; *Liberta,* 474 N.E.2d at 574-75. Therefore, because we cannot discern any rational justification that would support a legislative determination that marital rape is a less severe crime than nonmarital rape, this theoretical legislative determination does not constitute a rational basis for granting a certain class of individuals immunity from punishment under the first degree rape statute merely because they are married to their victims.

¶29 Upon close inspection, each potential rationale for the marital exemption that we have considered, whether traditional or modern in origin, is utterly devoid of merit. Not one provides a rational basis for drawing a distinction between individuals who are married to the victims of their nonconsensual sexual acts and those who are not. Indeed, we cannot conceive of any justification for allowing individuals to escape punishment for rape solely because they are married to their

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 21 of 26

2025 VI 4

victims. As Justice Holmes wrote: "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Oliver Wendell Holmes, *The Path of the Law*, 10 HARV. L. REV. 457, 469 (1897). Accordingly, because the marital exemption provided in § 1701(c) bears no rational relationship to any legitimate government interest, 14 V.I.C. § 1701 is unconstitutionally underinclusive in violation of the Equal Protection Clause of the Fourteenth Amendment.

### D. Plain Error & Remedy

¶30    Although we have determined that § 1701 is unconstitutionally underinclusive, because Wilkinson failed to raise his equal protection argument before the Superior Court, we review the judgment of the trial court only for plain error. Virgin Islands Rule of Criminal Procedure 52(b) states: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." The Supreme Court of the United States has explained that the identical provision in Federal Rule of Criminal Procedure 52(b) "defines a single category of forfeited-but-reversible error."[11] *United States v. Olano*, 507 U.S. 725, 732 (1993). Under this rule, the error "may be considered" only if it is plain and affects substantial rights. *Id.* In this context, "considering" an error specifically means correcting that error by either vacating a judgment of the Superior Court and remanding for a new trial or reversing the judgment outright unless certain

---

[11] "Though we are mindful that decisions of federal courts interpreting a rule of federal procedure represent persuasive rather than binding authority in the context of this Court's interpretation of an identical Virgin Islands rule, we see no reason to depart from well-established federal jurisprudence on this issue." *Yearwood Enterprises, Inc. v. Antilles Gas Corp.*, 69 V.I. 863, 869–70 (2018) (citing *Antilles Sch. v. Lembach*, 64 V.I. 400 (V.I. 2016) ("[C]ourts do not state that borrowed rules incorporate the construction given them by the highest court of [the] jurisdiction from which they were borrowed. Instead, courts typically view such earlier constructions of borrowed rules as [being] persuasive, not mandatory.")).

criteria are satisfied.[12] *Id.* ("More precisely, a court of appeals may correct the error (either vacating for a new trial, or reversing outright) only if it meets these criteria.").[13]

¶31　　Similarly, since our earliest decisions, this Court has consistently described the plain error doctrine as a rule establishing conditions precedent to the exercise of our discretion to *reverse* a judgment of the Superior Court. *See Murrell v. People*, 54 V.I. 338, 365 (2010) ("This Court has recently set forth the four elements that must be met in order to reverse a conviction under the plain error standard of review."); *Webster*, 60 V.I. at 676 ("[W]e will only exercise our discretion to reverse [a defendant's] conviction if the Superior Court's error was plain and affected [the defendant's] substantial rights, and affirming [the defendant's] conviction would seriously affect the fairness, integrity, or public reputation of judicial proceedings.") (internal quotation marks omitted); *Wallace v. People*, 71 V.I. 703, 711 (V.I. 2019) ("For this Court to reverse under a plain error standard of review, four conditions must be met."). Even in those cases in which we have described the plain error rule less precisely in terms of "noticing" or "correcting," rather than reversing an error not raised in the Superior Court, we have borrowed this language directly from decisions of the United States Supreme Court, and therefore must interpret these terms according to their technical and precise meaning as provided by that tribunal in opinions such as *Olano*. *See Davis v. People*, 69 V.I. 619, 675 (2018) (citing *Olano*, 507 U.S. at 732) (when the four plain error

---

[12] In *Olano*, the Supreme Court explained that the phrase "may be noticed," as it was then used in Rule 52(b), bears a specific and precise meaning. "Noticing" an error in this context doctrine means correcting that error by vacating or reversing a judgment of the lower court. 507 U.S. at 732. In 2002, the language of Rule 52(b) was amended to replace the more archaic phrase "may be noticed" with the phrase "may be considered," as part of the general restyling of the Criminal Rules to make them more easily understood. However, these changes were expressly intended to be stylistic only. Thus, because these two phrases are interchangeable in this context, the Supreme Court's analysis of the meaning and effect of the previous version of Rule 52(b) is equally applicable to the current, restyled version of the rule, and therefore equally applicable to the identical Virgin Islands rule as well.

[13] Indeed, as originally stated in *United States v. Atkinson*—the seminal decision in which the Supreme Court first articulated the plain error doctrine, and from which the language of Rule 52(b) is derived—the plain error doctrine was described as providing an exception to the general rule that "[t]he verdict of a jury will not ordinarily be set aside for error not brought to the attention of the trial court." 297 U.S. 157, 159 (1936).

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 23 of 26

2025 VI 4

factors are satisfied, "the Court may then exercise its discretion and notice the error"); *Nanton v. People*, 52 V.I. 466, 475 (2009) (citing *Olano*, 507 U.S. at 732) ("To correct an error which was not raised at trial, this Court must find: (1) an error; (2) that is plain; (3) that affected substantial rights." (internal quotation marks omitted); *Williams v. People*, 56 V.I. 821, 830 (2012), *overruled on other grounds by Titre v. People*, 70 V.I. 797 (2019) ("[A]n appellate court may, in its discretion, correct an error not raised at trial only where [the plain error criteria are satisfied].") (citing *United States v. Marcus*, 560 U.S. 258, 262 (2010)). Thus, the plain error doctrine is only implicated in cases in which we must determine whether to exercise our discretion to vacate or reverse a judgment of the Superior Court based on an error that was not raised in the proceedings below. *Olano*, 507 U.S. at 732.

¶32     In this case, there is no doubt that the Superior Court committed error by convicting Wilkinson pursuant to an unconstitutional statute. *See Webster*, 60 V.I. at 677 ("[B]asing a conviction on an unconstitutional statute is both 'plain' and an 'error.'") (*quoting United States v. Knowles*, 29 F.3d 947, 951 (5th Cir. 1994)); *see also United States v. Coil*, 442 F.3d 912, 916 (5th Cir. 2006) ("A conviction based upon an unconstitutional statute is both 'plain' and 'error.'"); *Crutchfield v. State*, 627 P.2d 196, 199 (Alaska 1980) ("If the regulation is unconstitutional, [the defendant's] conviction, to the extent that it is based on the regulation, constitutes plain error."). And, because Wilkinson failed to raise this error before the Superior Court, we may only exercise our discretion to reverse his conviction if the four elements of the plain error standard are satisfied. *Wallace*, 71 V.I. at 711. However, we need not reach this issue here because we conclude, for the reasons discussed below, that the appropriate remedy for the Superior Court's constitutional error is not to reverse Wilkinson's conviction, but rather to sever subsection (c) from § 1701 and affirm Wilkinson's conviction under the resulting, constitutionally valid statute. In other words, because

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 24 of 26

2025 VI 4

the constitutional error presented in this case may be remedied without reversing or otherwise disturbing the judgment of the Superior Court, we need not determine whether to exercise our discretion to reverse Wilkinson's conviction under the plain error doctrine.[14]

¶33 A determination that one subsection of a statute violates the constitution does not automatically render the entire statute unconstitutional. *United States v. Jackson*, 390 U.S. 570, 585 (1968). "Unless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Id.* When a court determines that a statute is unconstitutionally underinclusive, the court may either strike the statute in its entirety, or extend the coverage of the statute to those who were formerly excluded. *Liberta,* 474 N.E.2d at 170 (citing *Califano v. Westcott*, 443 U.S. 76, 89 (1979). Additionally, "[i]n any case where a court must decide whether to sever an exemption or instead declare an entire statute a nullity it must look at the importance of the statute, the significance of the exemption within the over-all statutory scheme, and the effects of striking down the statute." *Id.* We have already discussed the severity of the crime of rape and the important interests protected by the statutory proscription of forcible sexual conduct. Given the great importance of the first degree rape statute, declaring § 1701 a nullity in its entirety would certainly have a catastrophic effect on the public interest and safety. And while we are

---

[14] Although we need not decide the issue here, we note that there is also good reason to conclude that this error was "plain" within the meaning of Rule 52(b). Although we have never specifically addressed the constitutionality of 14 V.I.C. § 1701, in *Castor v. People*, 57 V.I. 482 (V.I. 2012), in the context of reviewing an appellant's convictions for first degree aggravated rape (14 V.I.C. § 1700) and first degree sexual assault (14 V.I.C. § 1708), we noted that courts in other jurisdictions have held that marital exemptions violate the Equal Protection Clause by treating married and unmarried persons differently without a rational basis for doing so. 57 V.I. at 490 n.4 (citing *Liberta*, 474 N.E.2d at 573–74). Moreover, the relevant law governing the rational basis review of a statute challenged under the Equal Protection Clause is well-established in the decisions of both this Court and the United States Supreme Court, *Eisenstadt v. Baird*, 405 U.S. 438, 447 (1972) (Equal Protection Clause forbids legislatures from according different treatment "to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute"), and "it is expected that [the Superior Court] knows and applies settled law." *Webster*, 60 V.I. at 677 (quoting *Hightree v. People*, 55 V.I. 947, 954 (V.I. 2011)).

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 25 of 26

2025 VI 4

reluctant to expand the scope of any criminal statute, due to the danger of usurping the role of the Legislature, the overriding policy concerns involved in this case compel us to do so to avoid the disastrous consequences that would flow from even the temporary elimination of the crime of first degree rape in this jurisdiction. *Id.*

¶34     We have no doubt that the Legislature would elect to retain a first degree rape statute that applies equally to married and unmarried individuals, rather than to eliminate the statute entirely. Therefore, § 1701(c) is hereby severed and stricken from the remainder of 14 V.I.C. § 1701. Consequently, spousal consent no longer constitutes an affirmative defense to the crime of first degree rape. In turn, because we sever only subsection (c) and uphold the constitutionality of the remaining subsections of § 1701, which remains a fully operative criminal statute, Wilkinson's conviction for first degree rape in violation of § 1701(a)(2) must be affirmed.[15]

## IV.     CONCLUSION

¶35     Because Wilkinson's convictions for both first degree rape and first degree sexual assault arise from the same act or course of conduct, we remand this matter to the Superior Court for resentencing in accordance with our decision in *Titre v. People*, 70 V.I. 797 (V.I. 2019). Additionally, because 14 V.I.C. § 1701 unreasonably and arbitrarily subjects Wilkinson to punishment for his conduct, while allowing others who engage in the same conduct prohibited by the statute to escape punishment merely because they are married to their victims, the statute is unconstitutionally underinclusive in violation of the Equal Protection Clause. However, because

---

[15] Wilkinson cannot claim that our decision to retain the remainder of the first degree rape statute, and consequently affirm his conviction thereunder, denies him due process of the law. While the due process clause of the Fourteenth Amendment requires that an accused have had fair warning at the time of his conduct that such conduct was made criminal by the State (*see Bouie v City of Columbia*, 378 U.S. 347 (1964)), Wilkinson did not fall within the exemption that we have stricken, and therefore his actions were clearly prohibited by the statute as it existed when he committed the rape.

*Wilkinson v. People*
S. Ct. Crim. No. 2017-0018
Opinion of the Court
Page 26 of 26

2025 VI 4

we sever and strike the marital exemption provided in 14 V.I.C. §1701(c) and uphold the remaining, constitutionally valid portions of the statute, we affirm Wilkinson's conviction for first degree rape in violation of 14 V.I.C. § 1701(a)(2).

**Dated this 28th day of January, 2025.**

**BY THE COURT:**

/s/

**MARIA M. CABRET**
**Associate Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

By: _____
  **Deputy Clerk** II

Dated: _____1-28-2025_____